Gates vs. Fleischer.

GATES, Respondent, vs. FLEISCHER, Appellant.

*November 27 — December 14, 1886.*

(1) *Malpractice: Skill required of physician.* (2-4) *Expert testimony: Form of questions.* (5) *Damages: Results of malpractice and of independent disease.*

1. A physician or surgeon is bound to bring to the aid and relief of his patients such skill as is ordinarily possessed and used by physicians and surgeons in the vicinity or locality in which he resides, having regard to the advanced state of the profession at the time.

2. A medical expert who has heard only a part of the testimony of a witness may be asked for his opinion, to be based upon a hypothetical statement of the facts testified to by that witness and not heard by the expert, and upon the testimony of such witness so far as he heard it.

3. Where a sufficient hypothetical statement of the facts testified to by several witnesses has been made in propounding one question to an expert, he may be asked another question as to his opinion based upon the facts testified to by such witnesses, without repeating such hypothetical statement.

4. An expert may be asked for his opinion based upon the facts testified to by several witnesses, without an hypothetical statement of

Gates vs. Fleischer.

such facts, if there was no material conflict in the testimony of such witnesses and the jury understand the exact facts upon which he is required to base his opinion.

5. Although the ill health of a person is caused partly by malpractice of a physician in treatment for one disease and partly by another disease from which he was suffering at the same time, he may recover damages for such malpractice; and in assessing such damages the jury must use their judgment in distinguishing the effects of the different causes.

APPEAL from the Circuit Court for *Marathon* County.

The defendant is a practicing physician and surgeon. The plaintiff brought this action against him to recover damages for injuries caused by his .alleged malpractice in his treatment of her, she being his patient.

In February, 1884, the plaintiff, who is a married woman, gave birth to a child. A few hours after the birth a physician — Dr. Garrey — attended her and removed the afterbirth. He also visited her on February 29th, March 1st, and March 3d. He found a slight laceration of about half an inch on the neck of the womb. Not regaining her strength satisfactorily, about three weeks after Dr. Garrey ceased to visit her she called in the defendant to treat her. Soon afterwards he again visited her, made local examination, and stated that she was suffering from uterine disease, and applied caustics to the cervical canal or mouth of the womb, on the theory that those parts were ulcerated. He continued the same treatment at intervals for several months. The health of the plaintiff not improving, she consulted Dr. Russell, of Oshkosh, about the last of September or first of October following. Dr. Russell examined her, and testifies that he found the cervical canal entirely closed. He opened it by artificial means. There seems to be no dispute that during the whole time of her illness the plaintiff was suffering from *septicæmia* or blood-poisoning.

The testimony and rulings of the court on the trial are sufficiently stated in the following opinion. The jury found

for the plaintiff, and assessed her damages at $350. A motion by the defendant for a new trial was denied, and judgment rendered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Crosby & Pink*, and oral argument by *Mr. Pink*. As to the degree of skill and care required of a physician, they cited *McCandless v. McWha*, 22 Pa. St. 261; Wharton on Neg. sec. 730; *Carpenter v. Blake*, 60 Barb. 488; *Musser's Ex'r v. Chase*, 29 Ohio St. 577; *Sutton v. Facey*, 1 Mich. 243; *Bowman v. Woods*, 1 Greene (Iowa), 441; 3 Wharton & Stille's Med. Jur. sec. 766; *Craig v. Chambers*, 17 Ohio St. 253; *Bayles v. Hazlett*, 11 Weekly Notes Cas. 212; *Quin v. Higgins*, 63 Wis. 664; *Simonds v. Henry*, 39 Me. 155; 7 Foster, 460; 28 Me. 97; Elwell on Malpractice, 53.

For the respondent there was a brief by *Grace & Alban*, and oral argument by *Mr. Grace*. They argued, *inter alia*, that one who holds himself out to the public as a physician and surgeon should possess and exercise that degree of skill which is ordinarily possessed by physicians in practice, and for an injury resulting from a want of ordinary skill, or from a failure to exercise proper diligence and caution in the treatment of a case, the physician is responsible. *Gramm v. Boener*, 52 Ind. 497; *Reynolds v. Graves*, 3 Wis. 416; *Kuehn v. Wilson*, 13 id. 104; *Leighton v. Sargent*, 59 Am. Dec. 388, and notes. Regard must be had to the advanced state of the profession at the time. *Haire v. Reese*, 7 Phila. 138; 4 Wait's Act. & Def. 682; *Smothers v. Hanks*, 11 Am. Rep. 141; *Almond v. Nugent*, id. 147; *Small v. Howard*, 128 Mass. 131; 3 Whart. & Stille's Med. Jur. secs. 766, 770, 771.

LYON, J. I. On the trial of the action, nine physicians were examined at considerable length, and gave testimony as experts. As sometimes happens in such cases, there is

some conflict of opinion between these witnesses. However, the testimony tended to prove, and the jury were justified in finding therefrom, that the plaintiff had no ulcers upon her womb or in the cervical canal, and the treatment with caustics was unjustifiable; that advanced medical science discards the use of caustics in cases of ulceration, as a dangerous practice; that, had the caustic treatment been proper, it was applied in an improper manner by the defendant; that such treatment caused *cicatrix* in, and the closure of, the cervical canal; that the treatment and consequent closure of that organ caused the plaintiff severe and protracted pain and prostration, and has greatly injured her health; and that the plaintiff was not guilty of any negligence or want of reasonable care of herself or failure to observe the proper directions of the defendant, which contributed proximately to the injuries of which she complains.

The defendant was bound to exercise reasonable skill and care in the treatment of the plaintiff. As the learned circuit judge correctly instructed the jury: "The defendant being a physician and surgeon, and as such called to prescribe for and professionally treat the plaintiff, he was bound to bring to her aid and relief such skill as is ordinarily possessed and used by physicians and surgeons in the vicinity or locality in which he resides, having regard to the advanced state of the profession at the time of the treatment." Under this rule of law defining the obligations of the defendant to his patient, and in view of the facts which the testimony tended to prove as above stated, the verdict for the plaintiff cannot be disturbed for want of evidence. To sustain the verdict, it must be conclusively presumed that all of such facts essential to a recovery by the plaintiff were found by the jury to have been proved.

II. Many exceptions were made on behalf of defendant during the trial to the rulings of the court on objections to

the admission of testimony. But two of these are relied on by his counsel as erroneous. These only will be considered.

1. A question was put by the plaintiff to Dr. Wylie, a physician called by her as an expert, which contained a hypothetical statement of all the material facts testified to by the plaintiff and by her witnesses Drs. Higgins, Russell, and Garrey. He was asked what, in his opinion, was the cause of the injury to plaintiff,— taking such facts as true. Dr. Wylie answered that in his opinion the use of caustic was the cause thereof. He then testified that he had heard all the testimony of the physicians above named, and all of plaintiff's testimony from and after a specific point therein. None of the above testimony was objected to.

A question was then put to Dr. Wylie on behalf of the plaintiff, in which material facts testified to by plaintiff down to the time when the witness heard her testimony were stated hypothetically, and he was asked what, in his opinion based upon such statement and "upon all the evidence testified to by the plaintiff, the facts stated by her, on the facts stated and testified to by Dr. Higgins, Dr. Russell, and Dr. Garrey," was the cause of the present ill health of the plaintiff. This question was objected to because the witness did not hear the entire testimony of the plaintiff, and for no other reason. The objection was overruled; and the witness answered, in substance, that her ill health was caused by the presence of cicatricial tissue in the cervix, and by *septicæmia*, or blood poisoning.

The special objection interposed to the testimony was obviated by an hypothetical statement to the witness of all the material facts testified to by the plaintiff when the witness was not present.

Moreover, had the objection been to the form of the question, it should not have been sustained, for the reason that a sufficient hypothetical statement of the facts testified to by

the persons named in the question had just been made to the witness. It was unnecessary to repeat such statement in the question objected to. Furthermore, there was no material conflict in the testimony of the witnesses named, and the jury must have understood the exact facts upon which the witness was required to base his opinion. For this reason, independently of the fact that a sufficient hypothetical statement of the testimony had just been made, the question does not violate the rule of *Quin v. Higgins,* 63 Wis. 664, and *Bennett v. State,* 57 Wis. 69. It comes rather within the reason of the rule of *Wright v. Hardy,* 22 Wis. 348, in which a question in this form, based upon the testimony of a single witness, was approved.

2. A medical witness — Dr. Albers — called by defendant, on his direct examination gave testimony as an expert concerning the use of caustic for ulceration of the womb, to the effect that such use was authorized by approved medical authorities. On his cross-examination he was asked: "Do you think the use of caustic until the womb is closed up is proper?" The witness answered in the negative. The question was objected to, and the objection overruled. The defendant excepted, and assigns error upon such ruling.

The testimony tends to show that caustic was used until August 18th, and the closure was found complete about October 1st. Although the defendant testified that the womb was not closed on September 13th, yet, from the whole evidence the jury might properly have found that the process of closing was practically complete when the use of caustic was abandoned. This answers the only objection urged against the admissibility of the testimony. We think it was within the limits of legitimate cross-examination.

III. The charge given by the learned circuit judge to the jury contains a clear and accurate statement of the law

governing the case. Nothing in it was excepted to, and we think it is quite unexceptionable. But counsel for defendant proposed several instructions which the court refused to give, except as the same were contained in the general charge. It is unnecessary to set out all of these proposed instructions here. Indeed, but one of them requires special notice. It may correctly be said of them that, in so far as they are material to the case and contain correct legal propositions, they were fully given in the general charge. The one just mentioned is as follows: "If the jury find from the evidence that the ill health of the plaintiff was caused in whole or in part by blood poisoning, and the weakness and debility of the plaintiff since is the result in whole or in part of the effect of blood poisoning, then the plaintiff cannot recover in this action." The instruction was properly refused. It is not a correct legal proposition that if the ill health of the plaintiff was caused in part by blood poisoning she cannot recover. Otherwise a person suffering from one disease could never recover damages for the malpractice of a physician who treats him for another disease, no matter how gross and inexcusable such malpractice or how grievous the injury caused thereby. Such is not the law. The charge of the court applicable to this subject gives the law correctly. It is as follows: "In such case [that is, if they find the defendant liable in the action] it will be necessary, as best you may from the evidence, to distinguish the pain, suffering, and injuries or ill health of the plaintiff, if any, chargeable to the fault of the defendant, from those chargeable to her condition when the defendant was called to treat her, and also those, if any such there are, justly chargeable to the treatment of other physicians, or to any other cause."

The difficulty suggested by counsel in assessing damages under the rule laid down by the court is rather imaginary than real, as in all other actions to recover unliquidated

damages the jury must assess the same according to their best judgment, with due regard to all the circumstances of the.case proved on the trial affecting the amount of damages. If the jury in this case erred in that behalf, the very moderate assessment made by them proves that they erred in favor of the defendant. We find no error in the refusal of the court to give the proposed instructions.

IV. The defendant moved for a new trial on the ground of improper conduct of jurors during the trial. He filed two affidavits in support of his motion. One of these is to the effect that a person named therein during the trial talked to two of the jurors about the defendant, denouncing him as being ignorant and a drunkard, and saying other derogatory things of him, tending to prejudice the minds of such jurors against him. The other affidavit is to the effect that during a recess in the trial some of the jurors read from medical books which the attorneys had in court, and that on one occasion a medical book was taken to the jury-room and there read by the jurors.

Counter-affidavits made by several of the jurors were read, denying or explaining these charges. In these it was denied by the two jurors implicated that any one talked to them about defendant out of court, and it was particularly denied that the person did who was charged in the moving affidavit to have done so. Several jurors testified that on one occasion, during a recess of ten minutes, a medical work was taken to their room and jurors examined the plates and pictures therein, but none of them read from the book or from any other medical book during the trial.

Without determining whether such charges of misconduct, if true, are sufficient cause for a new trial, we think the charges are satisfactorily answered and refuted by the counter-affidavits read on the hearing of the motion. Doubtless the circuit judge was of the same opinion.

After a careful examination of the record, we fail to find any material error disclosed therein.

*By the Court.*— The judgment of the circuit court is affirmed.

