McKeon vs. Chicago, Milwaukee & St. Paul R. Co.

McKeon, Respondent, vs. Chicago, Milwaukee & St. Paul
Railway Company, Appellant.

*November 9 — November 24, 1896.*

*Railroads: Personal injuries: Miscarriage: Tort or contract? Duty to
awaken passenger in sleeping-car: Evidence of medical experts: In-
structions: Proximate cause: Degree of care: Immaterial error:
Special verdict: Credibility of witnesses: Injury to feelings: Ex-
cessive damages: New trial.*

1. A complaint in an action against a railway company for personal
injuries sustained by a passenger in its sleeping-car by reason of
the negligence of its porter in failing to awaken her at her desti-
nation in time to properly dress before leaving the car, and in
opening the curtains of her berth while she was undressed, and
compelling her to proceed partly dressed into another car in the
presence of several strange men, whereby she received a nervous
shock which produced a miscarriage,— is *held* to state a cause of
action in tort and not in contract, although the complaint also
alleged that it was implied in the contract of carriage that the
defendant should awaken plaintiff a sufficient time before reach-
ing her destination to enable her to prepare herself and child to
leave the train without haste or delay.

2. It was the duty of the railway company in such a case, whether stip-
ulated in the contract of carriage or not, to awaken the plaintiff
in time to make the necessary preparation to leave the car in a
suitable and decent manner upon reaching her destination, or to
hold the train at that point for a sufficient length of time to en-
able her to make such preparation, and a failure in that regard
resulting in damage to the plaintiff would render the defendant
liable.

3. It was not error to allow medical experts, who had heard a part of
plaintiff's testimony in court and the remainder read to them by
the court reporter, to give their opinion as to the cause of the mis-
carriage, assuming plaintiff's testimony to be true.

4. An instruction that by the words " direct and proximate cause " in
the special verdict was meant the cause which naturally led to,
and might have been expected to be directly instrumental in pro-
ducing, the result complained of; and that if they found the fail-
ure to awaken the plaintiff and her treatment thereafter to be the
cause which, under all the proofs, led naturally to, and might
have been expected to be directly instrumental in producing, the

injuries which they should find the plaintiff had sustained, then they should find that such failure and such treatment were the direct and proximate cause of the injuries sustained, otherwise not,— although perhaps too general, was not misleading as authorizing an affirmative answer if the defendant or its porter might have expected such result, rather than if a man of ordinary care and prudence would have expected it.

5. The error, if any, in an instruction that it was the defendant's duty to use the utmost care and diligence to awaken the plaintiff in time, was rendered immaterial by findings of the special verdict that the defendant's porter did not awaken her, nor attempt to awaken her, nor have good reason to believe that he had awakened her.

6. An instruction that in carrying passengers railroads are held to the highest degree of care, diligence, and skill consistent with the mode or means of transportation, under the particular circumstances in proof; that they are bound to give passengers reasonable notice of the approach to their station in order that they may alight; and that the jury were required to find whether, under the circumstances in this case, the porter used such care in his treatment of plaintiff after she was awakened and until she was put into the other car,— is *held* to have related entirely to the degree of care to be exercised by the defendant in *safely carrying passengers*, and hence was not erroneous.

7. It was not error to refuse to submit for special verdict questions which related to evidentiary facts.

8. The credibility of witnesses and the weight and effect of their testimony is for the jury, and where the court has correctly instructed that if a witness has deliberately and knowingly sworn falsely in regard to one material fact in the case the jury were not bound to believe any of her statements unless corroborated, it was not error to refuse instructions which cast suspicion upon the testimony of a particular witness.

9. A refusal to instruct the jury that in determining the question of plaintiff's damages they must not allow anything for any feeling of shame and humiliation unless it caused or contributed to her bodily injury was not erroneous.

10. It was not error to instruct that the jury were called upon to find the facts submitted for special verdict as they believed them "to be *established* by the *fair weight* of *all* the evidence."

11. A refusal to set aside a verdict on the ground that the damages are excessive is not erroneous unless they are so excessive as to create the belief that the jury were misled by passion, prejudice, or ignorance.

McKeon vs. Chicago, Milwaukee & St. Paul R. Co.

APPEAL from a judgment of the circuit court for Lincoln county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Curtis & Reid* and *Burton Hanson,* attorneys, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *Van Hecke & Smart,* attorneys, and *Henry C. Hetzel,* of counsel, and oral argument by *E. M. Smart.*

CASSODAY, C. J. This is an action to recover damages sustained by reason of the defendant's maltreatment of the plaintiff while riding on the defendant's passenger train, at and near New Lisbon, in this state, in respect to her changing cars at that place. Issue being joined and a trial had, the jury returned a special verdict, the findings of which, together with the undisputed facts, are to the effect that, on the evening of June 16, 1894, the plaintiff and her husband and their little boy were in Chicago; that the husband bought of the defendant two tickets — one for himself and the other for the plaintiff,— from Chicago to Merrill, in this state; that they started on the train about half past 10 o'clock that evening; that, upon boarding the train, the plaintiff's husband bought a sleeping-car ticket for the plaintiff and their little boy from Chicago to New Lisbon; that, within a few minutes after, the plaintiff and the little boy retired in their berth, and remained there until the train reached New Lisbon; that, when the train reached Milwaukee, another sleeper, destined for Merrill, was attached to the train; that the train reached New Lisbon between 5 and 6 o'clock the next morning; that the defendant's porter did not awaken the plaintiff in time for her to dress herself and child before the train arrived at New Lisbon; that the defendant's porter did not attempt to awaken plaintiff at or near the station called Lyndon; that the defendant's porter did not have good reason to believe that he had

McKeon vs. Chicago, Milwaukee & St. Paul R. Co.

awakened the plaintiff; that the defendant's porter did not exercise proper care in his treatment of the plaintiff after she was awakened and until she was put into the Merrill sleeper at New Lisbon; that such failure to awaken the plaintiff, and her treatment by the defendant's porter after the train arrived at New Lisbon, was the direct and proximate cause of the injuries she sustained; that the plaintiff was not guilty of any want of ordinary care which contributed to cause the injuries she sustained; that, under all the attending circumstances, a nervous shock sufficient to cause bodily injuries, or damages of some form or some kind, to the plaintiff, might have been reasonably expected, by a man of ordinary intelligence and prudence, conducting the business carried on by the defendant, to result from the failure to so awaken the plaintiff, and from the treatment she received before and while being transferred to the Merrill sleeper; that, if the court orders judgment for the plaintiff on the verdict, then the jury assesses her damages at $2,500; that the plaintiff and little boy first passed into the sleeper for Merrill, and then, after a little while, went to a hotel in New Lisbon, and the plaintiff there laid down; that, between 9 and 10 o'clock that morning, they started on the train from New Lisbon to Merrill,— not in the sleeper, but in an ordinary passenger car; that at Mosinee Dr. E. C. Fish was called into the car to attend the plaintiff, and he found that she was about to have a miscarriage, and did have such miscarriage on the train. From the judgment entered on the special verdict in favor of the plaintiff, the defendant brings this appeal. Counsel assigns twenty-nine different errors, and these several errors are discussed under twenty-two different heads. We must be excused from dividing the transaction up into so many different fragments, and then considering each fragment by itself, disconnected from the other facts and circumstances in the case, with which it is properly, if not necessarily, connected.

1. Some of these errors are based on the theory that the complaint alleges a cause of action on contract, and not in tort. True, the complaint alleges, in effect, that there was implied in the contract of carriage that the defendant would awaken the plaintiff a sufficient length of time before reaching New Lisbon to enable her to dress herself and child, and otherwise prepare herself to be ready to leave the train safely and without haste or delay when the same should arrive at that place. It also alleges, in effect, that, according to the rules and regulations of the defendant, and by common usage and practice, it was its duty to so awaken the plaintiff, and that the servants and employees of the defendant in charge of the sleeper agreed to so awaken her when she procured her berth, but that they " did not call nor awaken her before reaching New Lisbon, but neglected and failed so to do, without any reason therefor;" that the plaintiff was still sleeping when the train reached New Lisbon; that, upon reaching New Lisbon, the porter of the car drew the curtains in front of her berth apart, and informed the plaintiff, occupying the same, that the train had arrived at New Lisbon; that she must hurry and leave the train at once; that, upon her requesting him to hold the train for a few minutes, to enable her to dress herself, he refused so to do, and continued to urge her to leave the car at once; that, from the time she was awakened until the departure of the train from the station, the time was insufficient to permit the plaintiff to properly prepare herself and leave the train; that she at once arose from her berth, and the porter refused to allow her to put on her clothing, but pushed, hustled, and hurried her to the rear end of that car, to which the sleeper for Merrill was attached, and into which she was required by the porter to go; that the train on which she had so been traveling was started about the time she reached the door of the sleeper she was so leaving; that, by reason of the conduct of the porter, and the facts stated, and the starting

of the train, she was at the time very much excited, and fell with great force against the framework or fixtures of the Merrill sleeper, on entering the same, on account of which she was seriously bruised and injured; that, at the time she was so ejected from the car, she had on but little clothing, and her person was exposed to a number of men, occupying the Merrill sleeper at the time she entered the same, and they saw her in that condition; that it was raining very hard at the time, and she was exposed to the same in leaving the train; that she was at the time thirty years of age, and in good health, but pregnant with child; that, by reason of the facts stated, she became very ill a few minutes after entering the Merrill sleeper, and had a miscarriage on the same day. From the whole complaint we think it was manifest that the cause of action alleged is for the maltreatment of the plaintiff,— and hence is in tort, and is not for a mere breach of contract. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342; *Mueller v. Milwaukee St. R. Co.* 86 Wis. 340.

2. It is contended that actionable negligence is not proved, and hence that a verdict should have been directed in favor of the defendant, or else the verdict should have been set aside and a new trial granted. It is enough to say, in answer to such contention, that the evidence in behalf of the plaintiff tends to prove the allegations of the complaint. It also appears that the findings of the jury are supported by the evidence. It was impossible for the defendant, with a train running to La Crosse, to carry the plaintiff to Merrill without her changing cars at New Lisbon. As the plaintiff held the defendant's sleeping-car ticket to New Lisbon, she was necessarily expected to use it by occupying her berth until awakened for the purpose of making such change of cars. To make such change, it became the duty of the defendant, whether stipulated in the contract of carriage or not, to either awaken her in time to make the necessary preparation for such change in a suitable and decent manner, upon

reaching the station, or, failing to so awaken her before reaching the station, to hold the train at that point for a sufficient length of time to enable her to make such preparation as was necessary to change cars without trepidation or the exposure of her person to the gaze of spectators. The neglect of the defendant to perform such duty, resulting in damage to the plaintiff, under the facts and circumstances stated and found, is sufficient to authorize a recovery, notwithstanding such duty is not expressly prescribed in the contract. These views are supported by numerous adjudications. A few only are cited: *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342; *Stutz v. C. & N. W. R. Co.* 73 Wis. 147; *Dawson v. L. & N. R. Co.* 11 Am. & Eng. R. Cas. 134; *Pullman Palace Car Co. v. Smith,* 13 L. R. A. 215, 79 Tex. 468; *Galveston, H. & S. A. R. Co. v. Roemer,* 1 Tex. Civ. App. 191; *Fordyce v. Nix,* 58 Ark. 136; *Kentucky C. R. Co. v. Biddle* (Ky.), 34 S. W. Rep. 904. Counsel for the defendant cite *Nichols v. C. & W. M. R. Co.* 90 Mich. 203, but it is not in point. In that case the plaintiff had no sleeping-car ticket. The court held that it was the duty of the conductor or brakeman to call out the station, but not to awaken the plaintiff. In that case the plaintiff, after having passed his station, jumped off at a branch track or crossing in the woods, where there were no inhabitants or station agent, and without the knowledge or expectation of any of the trainmen.

3. We perceive no error in allowing the medical experts, who had heard the plaintiff give a part of her testimony in court, and then heard the balance of her testimony read to them by the court reporter, to testify what, in their opinions, was the cause of the miscarriage, assuming the testimony of the plaintiff to be true. *Gates v. Fleischer,* 67 Wis. 504; *Abbot v. Dwinnell,* 74 Wis. 514.

4. We find no reversible error in the portion of the charge to the jury to the effect that, by the words "direct and

proximate cause," contained in the special verdict submitted, was meant the cause which naturally led to, and might have been expected to be directly instrumental in producing, the result complained of; that, if they found the failure to awaken the plaintiff, so as to give her a reasonable time to dress herself and child (she using due and reasonable diligence) before the train reached New Lisbon, and the treatment she received thereafter, was the cause which, under all the proof, led naturally to, and which might have been expected to be directly instrumental in producing, the injuries which they should find the plaintiff had sustained, then their answer to the sixth question should be "Yes;" otherwise "No." The criticism is that the jury were at liberty, under the charge, to answer the question in the affirmative if the defendant or its porter might have expected the result in question, instead of a man of ordinary intelligence and prudence expecting the same; and they cite, in support of their contention, *Atkinson v. Goodrich Transp. Co.* 60 Wis. 162, 163. This portion of the charge may be too general, and not as definite and certain as it should have been, in the particular mentioned; but it is substantially the same as the instruction refused in the *Atkinson Case, supra.* If the defendant wanted a more definite and certain instruction, it should have been requested. We do not think the jury were misled.

5. Error is assigned because the court charged the jury to the effect that it was the defendant's duty "to use the utmost care and diligence" to see that the "plaintiff was awakened in time," etc. It is conceded that such is the degree of care which the defendant was required to exercise in safely carrying the plaintiff; but it is claimed that the defendant was not required to exercise the same degree of care in awakening the plaintiff. There may be good ground for the distinction. *Morris v. N. Y. C. & H. R. R. Co.* 106 N. Y. 678; *Palmer v. Pennsylvania Co.* 111 N. Y.

488; *Kelly v. Manhattan R. Co.* 112 N. Y. 443. However that may be, the error, if any, was wholly eliminated by the answers to the first, third, and fourth questions of the special verdict, to the effect that the defendant's porter did not awaken the plaintiff, nor attempt to awaken her, nor have good reason to believe that he had awakened her, as above stated. *Goldsworthy v. Linden,* 75 Wis. 25.

6. Error is assigned because the court charged the jury to the effect that, in carrying passengers, railroads are held to the highest degree of care, diligence, and skill consistent with such mode or means of transportation, under the particular circumstances in proof; that they are bound to give passengers reasonable notice of the approach to their station, in order that they may alight; that the jury were, by the fifth question, required to find whether, under the circumstances in this case, the porter used such care in his treatment of the plaintiff, after she was awakened and until she was put into the Merrill sleeper at New Lisbon. This last statement sufficiently expresses the nature of the fifth question; and it will be observed that it relates entirely to the degree of care to be exercised by the defendant in safely carrying the plaintiff as a passenger, and hence was not erroneous.

7. Numerous errors are assigned because the court refused to submit several additional questions to the jury, in effect, as to whether the defendant's porter stood in front of the plaintiff's berth at New Lisbon, and opened the curtains of that berth while the plaintiff was awake and sitting up in her berth; whether, by reason of such opening of the curtains, the plaintiff received a nervous shock, which was the direct or proximate cause of her miscarriage; whether, in making the journey from the plaintiff's berth to the Merrill sleeper, the defendant's porter did go ahead of the plaintiff and carry her child; whether the plaintiff, under the attending circumstances, ought to have suffered feelings of shame

and humiliation by being obliged to go into the presence of strange men with her person covered as it was at the time; whether the failure to awaken the plaintiff was the proximate cause of her injuries; and whether her nervous shock was the proximate cause of her injuries. Such questions all relate to evidentiary facts, and it is admitted, as to some of them. There was no error in any such refusals. As this court has frequently indicated, such special verdict was not designed to elicit from the jury an abstract of the evidence, and their form is very much in the discretion of the trial court. *Heddles v. C. & N. W. R. Co.* 74 Wis. 257, 258; *Montreal River L. Co. v. Mihills,* 80 Wis. 551 *et seq.*

8. Several errors are assigned because the court refused to charge the jury to the effect that the undisputed fact that the porter had awakened all the other passengers who were to change cars at New Lisbon tended to corroborate him in his statement that he did awaken the plaintiff; that, in determining the question of damages, they must not allow anything for any feelings of shame and humiliation, unless they caused or contributed to her bodily injury; that, under the circumstances, the plaintiff's husband would have been a competent witness; and that the failure to call him to contradict the porter's statement that he went into the Merrill sleeper just ahead of the plaintiff, and her husband just behind her, raised the presumption that her husband's testimony would have corroborated the porter. The court had already charged the jury to the effect that, if the plaintiff had "deliberately and knowingly sworn falsely in regard to one material fact in the case," then they were not bound to believe any of her statements, unless corroborated. The question as to the credibility of the witnesses and the weight and effect of their testimony was for the jury. *Benjamin v. Covert,* 55 Wis. 157; *Pool v. C., M. & St. P. R. Co.* 56 Wis. 227; *Thomas v. Paul,* 87 Wis. 607. The court was not required to cast suspicion and doubt upon the testimony

of any particular witness. *Valley L. Co. v. Smith,* 71 Wis. 304. So far as the request to charge respecting the plaintiff's feelings of shame and humiliation, the giving of it would have been misleading, besides being objectionable under the authorities cited. We find no error in refusing the instructions mentioned.

9. Exception is taken because the court charged the jury that "many of the claims of the plaintiff as to just what occurred have been denied by the defendant's witnesses, and you will be called upon to find the facts you believe to be *established* by the *fair weight* of *all* the evidence, as embodied in the special verdict submitted to you." The criticism is upon the use of the word "fair," but the facts were "to be *established* by the fair weight of all the evidence." The word "establish" ordinarily means to settle firmly — to fix unalterably; and hence the facts could not be so "established" except by the greater weight or preponderance of the evidence. Manifestly, it was not misleading. *Thomas v. Paul,* 87 Wis. 607.

10. We cannot say that the verdict is so excessive as to create the belief that the jury were misled by passion, prejudice, or ignorance, and hence there was no error in not granting a new trial on that ground. *Corcoran v. Harran,* 55 Wis. 120; *Brown v. C., M. & St. P. R. Co., supra.* Other exceptions in the record must be regarded as not of sufficient importance to call for special consideration, and hence are overruled.

*By the Court.*— The judgment of the circuit court is affirmed.