LYON, Respondent, vs. CITY OF GRAND RAPIDS, Appellant.

*March 28—April 19, 1904.*

*Municipal corporations: Claims: Appeal from council: Limitation: Injury from defective sidewalk: Pleading: Contributory negligence: Prior knowledge of defect: Evidence: Leading questions: Other defects: Expert testimony: Special verdict: Instructions. Improper statements by counsel: Immaterial errors.*

1. Under ch. 68, Laws of 1901, if no notice of the action or non action of a city council upon a claim is served upon the claim- . ant, the right to appeal is not limited to eighty days after the filing of the claim, as provided in sec. 925—60, Stats. 1898.
2. In an action for injury alleged to have been caused by a defective sidewalk, a complaint alleging that a cross-plank of the walk was broken and depressed at the center to the ground, is not insufficient merely because it fails to state the depth of the hole.
3. Where plaintiff knew of the hole in a sidewalk into which she stepped and was injured, contributory negligence in not remembering and avoiding the danger is presumed in the absence of satisfactory excuse for forgetting it.
4. The evidence in this case—to the effect that the accident happened in the evening when it was quite dark; that plaintiff was carrying several things which somewhat occupied her attention; that when near the hole her husband, who was a short distance ahead of her, called to her to hurry up; that this drew her attention to him; and that almost immediately thereafter she stepped into the hole—is *held* such that the jury might reasonably have found that plaintiff was excusable for not remembering the defect.

5. In the direct examination of a party or an interested witness, leading questions suggesting the answer favorable to him should never be allowed except under peculiar circumstances reasonably calling for such departure from the ordinary method. Thus, in this case, after plaintiff had testified in a manner indicating that she was traveling on the walk regardless of the defect and without any reasonable excuse therefor, a question asked by her counsel, "Did the things you had in your arms, as you have described them, have any effect upon your attention?" was leading and improper.

6. Evidence as to a generally defective condition of the sidewalk in the vicinity is not admissible where the particular defect causing the injury—in this case the breaking down of a strong plank—had no relation to such general condition; and where, under such circumstances, the evidence is admitted in a way indicating that it may be considered upon the question of constructive notice of the defect complained of, the error is prejudicial.

7. Opinion evidence should not be permitted to extend to the merits of the controversy, passing upon questions to be submitted to the jury, or to go outside the field of scientific knowledge.

8. In an action for personal injuries alleged to have been caused by a defective sidewalk, a medical expert was asked what, in his opinion, was the cause of the particular diseased condition of plaintiff to which he had testified, basing such opinion on the assumption that her testimony was true and upon his observation and examination of her. Held, that a general objection to the question as incompetent did not reach the defect, if there was one, that the question was not sufficiently restricted to prevent the witness from going outside the field of scientific knowledge; and, no motion having been made to strike out the answer that plaintiff's diseased condition was caused by her fall on the sidewalk, there was no error of which defendant can complain.

9. The question whether a defect in a sidewalk had existed long enough to enable the city by the exercise of ordinary care to discover and remedy it before the accident, is a single question, proper to be submitted for special verdict without division.

10. In submitting such question to the jury, the law applicable to the fact should not be embodied therein, as by asking whether the defect had existed long enough to *make it the duty* of the city to discover and repair it.

11. Upon the question, submitted for special verdict, whether plaintiff was guilty of any want of ordinary care which contributed

to the injury, defendant is entitled, upon proper request, to have the jury instructed that a *slight* want of ordinary care on the part of plaintiff which contributed to the injury is sufficient to require an affirmative answer; but if the instruction as requested omits the essential element that the slight want of care *contributed to the injury*, its refusal is not error.

12. In an action for injuries caused by a defect in a sidewalk of which plaintiff had prior knowledge, defendant is entitled, upon request, to have the jury instructed, upon the question of contributory negligence, that plaintiff's knowledge of the defect made it her duty to use greater care than would otherwise have been required of her in order to come up to the standard of ordinary care.

13. Where a special verdict is taken it is error for the court to inform the jury as to the effect of their findings by instructing them in regard to the law applicable to the facts as they may find them.

14. An objection in this case to the conduct of plaintiff's counsel in stating to the jury the effect of certain answers to the special questions having been sustained by the trial court, there was no prejudicial error.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action for a personal injury attributed to failure of defendant to keep one of its sidewalks in a reasonably safe condition for public travel. The complaint, aside from the formal allegations, sets forth the following: March 16, 1901, while plaintiff in the exercise of ordinary care was traveling on the sidewalk in such city in front of lot 10, and near the line between that and lot 11, block 6, McComb's addition to said city, she stepped into a hole in such walk, formed by one of the twelve-inch cross-planks being broken in the center and settling to the ground. By the act of stepping into such hole plaintiff was caused to fall and greatly injure her hip, spine, and the nerves leading therefrom, to her damage in the sum of $5,000. The hole had existed for about three weeks prior to such occurrence. That was time enough for the officers of the city, in the exercise of ordinary care, to have discovered the defect and remedied it. The plank was

broken by reason of a horse, in charge of a city employee, being driven over the walk while operating a snowplow. The walk was not designed, nor at all suitable, for such usage. The man in charge of the horse was acting under directions of the city when the plank was broken, and was working as directed by the proper public officer. March 30, 1901, notice of the injury was given in writing to the defendant as provided by sec. 1339, Stats. 1898. June 4, 1901, plaintiff filed with the city clerk her claim for damages, setting forth the facts required by law, rendering it the duty of the defendant's common council to pass upon the same. A copy of such notice is attached to the complaint. No action was taken upon such claim by the council. After the expiration of sixty days, and without any notice having been served upon the plaintiff by the city as to its nonaction, plaintiff appealed to the circuit court for Wood county, complying with sec. 925—60, Stats. 1898, in respect thereto.

Defendant's counsel joined issue respecting the extent of plaintiff's injuries and the allegations as to its failure of duty respecting the condition of the sidewalk. On the trial there was a demurrer *ore tenus,* which was overruled. At the close of the evidence there was a motion to dismiss the appeal upon the ground that it was not properly taken, and also a motion for a directed verdict upon several grounds. Both motions were overruled. The case was then submitted to the jury for a special verdict upon defendant's motion. The questions submitted, and answers thereto, are as follows:

"1. Did the plaintiff receive physical injury, at the time and place charged, by reason of a fall upon the sidewalk? *Answer* (by the court). Yes.

"2. Was the sidewalk at the time and place of the accident in a defective and unsafe condition for travel? *A.* Yes.

"3. If you answer the second question 'Yes,' had such defective and unsafe condition of the sidewalk existed for such length of time before the accident and injury to the plaintiff as to have made it the duty of the proper city authorities, in

charge of its streets and sidewalks, in the exercise of reasonable care and diligence, to have known of and repaired the same before the accident? *A*. Yes.

"4. If you answer the second question 'Yes,' then was such defective and unsafe condition of the sidewalk the proximate cause of the accident and plaintiff's said injury? *A*. Yes.

"5. Was the plaintiff guilty of any want of ordinary care which caused or contributed to the injury? *A*. No.

"6. If the plaintiff shall be entitled to recover in this action, in what sum do you assess her damages? *A*. We assess the damages at four thousand dollars ($4.000)."

Thereupon various motions were made and overruled, and the rulings excepted to. Such exceptions, with others taken upon the trial, including exceptions to the judge's charge and to refusals to instruct, preserve for review the questions discussed in the opinion. Judgment was rendered in favor of the plaintiff upon the verdict, and defendant appealed.

For the appellant there was a brief by *John A. Gaynor*, attorney, and *B. R. Goggins*, of counsel, and oral argument by *Theodore W. Brazeau*. They contended, *inter alia*, that since ch. 68, Laws of 1901, does not in terms refer to sec. 925—60, Stats.. 1898, and contains no repealing clause, the various provisions of said sec. 925—60 are still the law, except where there is a positive conflict between the two statutes. There was no intention to repeal the maximum time limit for an appeal and leave such time unlimited. The language of the act of 1901 refers to affirmative action by the council only, and does not under any circumstances extend the total time for appeal. See *Parker v. McAvoy*, 36 Wis. 322; *Munk v. Anderson*, 94 Wis. 27. The statements of counsel, informing the jury as to the legal effect of their answers in the special verdict, were so prejudicial that the wrong done could not be corrected by any ruling of the court. *Wunderlich v. Palatine Ins. Co.* 104 Wis. 382, 394; *Waldron v. Waldron*, 156 U. S. 361; *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 297, 298; *Sasse v. State*, 68 Wis. 530, 537;

*Wheeler & W. Mfg. Co. v. Sterrett,* 94 Iowa, 160; *Schillinger v. Verona,* 88 Wis. 317, 328; *Gutzman v. Clancy,* 114 Wis. 589, 596–599; *Baker v. Madison,* 62 Wis. 147, 148.

For the respondent there was a brief by *Brennan & Frost* and *D. D. Conway,* and oral argument by *Mr. Conway.*

MARSHALL, J. The appeal was not taken within the time provided by secs. 925—58 to 925—60, Stats. 1898, which were the law of the appellant city and governed the subject, except as modified by ch. 68, Laws of 1901. The first of such sections is to the effect that any claim or demand presented to the city council for allowance, and not acted upon within sixty days thereafter, shall be deemed disallowed; the next is to the effect that disallowance by the common council of any such claim, actual or constructive, shall preclude any action to enforce the same in the absence of an appeal from such disallowance having been taken as provided in the next section, which is to the effect, among other things, that the appeal must be taken within twenty days after the decision of the common council, the time limited therefor under any circumstances being eighty days after the filing of the claim with the city clerk. *Mason v. Ashland,* 98 Wis. 540, 74 N. W. 357.

As the taking of the appeal within the time required by law is essential to the cause of action, if that does not appear by the complaint, where one is served, the same is open to a demurrer for insufficiency. *Koch v. Ashland,* 83 Wis. 361, 53 N. W. 674; *Telford v. Ashland,* 100 Wis. 238, 75 N. W. 1006; *Morgan v. Rhinelander,* 105 Wis. 138, 81 N. W. 132. The complaint here does not show that the appeal was taken within eighty days after the claim was filed, but does show that no notice was served on respondent of action or nonaction thereon by the common council. By reason thereof, it is claimed by respondent's counsel, the time for taking her ap-

peal never commenced to run because of ch. 68, Laws of 1901, which provides as follows:

"Whenever any city council shall have disallowed any claim or permitted the same to be disallowed, wholly or partly, by its failure to act thereon within the time limited by law, the clerk shall prepare a notice of the action or non-action of the council upon such claim . . . for service on the claimant if he reside within such city. . . . If the claimant be a nonresident the clerk shall transmit such notice by registered letter through the mail. Any time limited for appeal by the claimant from the determination of his claim by the common council shall begin to run when such notice is served, or when such registered letter is received."

Notwithstanding the ingenious reasoning of counsel for appellant to the contrary, there seems to be no room for reasonable controversy but that this case is governed by that provision.

A further reason is given why the complaint is insufficient, that the depth of the hole is not alleged. That is not essential, sufficient being stated to indicate that a jury might be warranted in finding, upon satisfactory proof thereof, that the walk was insufficient. The complaint states that a cross-plank was broken and depressed at the center to the ground. That might well have produced a very dangerous condition of the walk. It fully satisfies the test above suggested. Such a defect has no similarity to such as were involved in *Burroughs v. Milwaukee*, 110 Wis. 478, 86 N. W. 159, and *Kleiner v. Madison*, 104 Wis. 339, 80 N. W. 453.

The evidence of the plaintiff was to the effect that she knew of the defect in the sidewalk. That being so, contributory fault on her part in not remembering and avoiding the danger is to be presumed in the absence of satisfactory excuse for forgetting it. That, however, yields easily to evidence showing circumstances reasonably calculated to cause a person circumstanced as respondent was, to momentarily

forget the danger. *Collins v. Janesville,* 111 Wis. 348, 87 N. W. 241, 1087. The evidence was to the effect that the accident happened about 9 o'clock in the evening; that it was quite dark; that respondent was accompanied by her husband who was walking at the time of the occurrence a short distance ahead of her; that she carried a tin pail full of milk in her right hand, a basin of mince-meat in her left hand, and some fabrics upon which she had been at work, over her left arm; that her attention was somewhat occupied by her burdens; that when near the defect her husband called, "Hurry up;" that such circumstance drew her attention toward him, and that almost immediately thereafter she stepped into the hole and received the injury. That statement is sufficient of itself to answer counsel's contention as to there being no evidence from which the jury could reasonably have found that respondent was excusable for not remembering the defect.

Error is assigned because a leading question to respondent upon her examination in chief was allowed, in relation to a matter vital to her right to recover. After she testified in a manner indicating, in one aspect of her evidence, that she was traveling on the sidewalk on the occasion in question regardless of the defect and without any reasonable excuse therefor, she was asked by her counsel: "Did the things you had in your arms, as you have described them, have any effect upon your attention?" Against objection by appellant's counsel she was permitted to answer. Error was committed in that. The trial court has large discretionary authority as regards leading questions, but should not allow such questions on the examination in chief of a party, as regards one of the matters essential to his right to recover or his defense, there being no circumstance indicating that the truth of the matter, as understood by the witness, cannot be discovered without departing from the usual method of examination. In the examination of a party or an interested witness, leading

·questions suggesting the answer· favorable to him should never be allowed except under peculiar circumstances reasonably calling for a departure from the ordinary method of giving such party or witness an opportunity to tell his story. There seems to have been no reason for such a departure in the instance under consideration. Whether the error committed was prejudicial to the extent of constituting reversible error will not be determined, since there are other errors that require the judgment to be reversed.

Questions were permitted as to a general defective condition of the walk in the vicinity of the place where the accident occurred. Upon what theory, we are unable to discover. As counsel for appellant contend, such evidence is not permissible in such a case except on the question of notice, and when the specific defect is of such a character that the general condition of the walk would naturally draw attention to the precise defect complained of. *Olson v. Luck,* 103 Wis. 33, 79 N. W. 29; *Conrad v. Ellington,* 104 Wis. 367, 80 N. W. 456; *Shafer v. Eau Claire,* 105 Wis. 239, 243, 81 N. W. 409; *Shaw v. Sun Prairie,* 74 Wis. 105, 42 N. W. 271; *Barrett v. Hammond,* 87 Wis. 658, 58 N. W. 1053; *Viellesse v. Green Bay,* 110 Wis. 160, 85 N. W. 665. Here the unsafe condition of the walk causing the injury had no relation whatever to a general defective condition thereof. It was caused by the breaking down of a strong plank,—one of such strength that it could not reasonably have occurred by any ordinary use of the walk. The plank was twelve inches wide and reasonably sound. To break it required some such occurrence as the one claimed in the complaint, but as regards which·no evidence was given upon the trial. How the break occurred was not shown. There was no evidence of actual notice to the appellant of the defective condition of the walk, so respondent's whole reliance in respect thereto was proof of circumstances showing that appellant, by the exercise of ordinary care in respect to the walk, could have

discovered the defect in time to have remedied it before the accident. So the improper evidence was permitted in a way to indicate to the jury that it was to be considered on the question of notice, and therefore could not have operated. otherwise than prejudicially to appellant.

A question was allowed to a physician, called to give opinion evidence, as to what caused a particular diseased condition of respondent which he testified she was suffering from, basing such opinion upon the assumption that she had testified truthfully, and what he had seen of her from time to time, including that discovered upon his examination of her person as her physician. In treating this question, we assume that the witness had testified to the facts which had come to his knowledge in the manner indicated. The question was objected to as incompetent. Why was not stated, but probably it was because it contemplated an answer as to whether the injury caused the diseased condition of respondent claimed to exist. That was one of the vital questions in the case for the jury to pass upon. It is not controverted but that it was permissible for the expert to give opinion evidence as regards whether such condition was caused by violence of some kind applied to respondent's person, or by some other immediate producing cause not going to the circumstance which set such cause in motion. The books are full of instances of opinion evidence of that character. *Gates v. Fleischer,* 67 Wis. 504, 30 N. W. 674; *Selleck v. Janesville,* 100 Wis. 157, 75 N. W. 975; *Turner v. Newburgh,* 109 N. Y. 637, 16 N. E. 344; *McKeon v. C., M. & St. P. R. Co.* 94 Wis. 477, 69 N. W. 175; Lawson, Expert & Opinion Ev. 126. Whether an injury of the kind in question is sufficient to produce the particular effects alleged to have been caused thereby is a proper subject for expert evidence. *Smalley v. Appleton,* 75 Wis. 18, 43 N. W. 826; *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 61 N. W. 1101; *Werner v. C. & N. W. R. Co.* 105 Wis. 300, 81 N. W. 416. For the purpose

of interrogating an expert as to whether a particular condition of the human system found to exist at a particular time· is referable to violence, blood poisoning, or some other immediate producing cause, the form of the question is often that. adopted in this case. *McKeon v. C., M. & St. P. R. Co. supra; Gates v. Fleischer, supra.* "What, in your opinion, is the cause of the condition which you discovered?" or, upon the hypothesis that the physical condition of the person is as stated in the question, the expert is commonly asked to give· his opinion as to the cause thereof, meaning thereby, generally, the immediate cause. That is about as far as opinion evidence should be permitted to go other than under exceptional circumstances which strictly exclude any other producing cause than the particular one involved in the controversy. In such cases questions have been permitted which seem to invade the salutary rule that the expert is not to be permitted to usurp the functions of the jury by passing upon issues to be submitted to them. The following are good examples of cases where such questions have been approved, the evidence being uncontroverted in respect to the immediate producing cause, or the opinion being asked upon the hypothesis that the evidence in respect to some particular producing cause established the fact in that regard: *Crouse v. C. & N. W. R. Co.* 102 Wis. 196, 204, 78 N. W. 446, 778; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124; *Daly v. Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Stouter v. Manhattan R. Co.* 127 N. Y. 661, 27 N. E. 805; *Davis v. State,* 38 Md. 37; *Flaherty v. Powers,* 167 Mass. 61, 44 N. E. 1074; *Peterson v. C., M. & St. P. R. Co.* 38 Minn. 511, 39 N. W. 485; *McClain v. Brooklyn City R. Co.* 116 N. Y. 459, 22 N. E. 1062; *Turner v. Newburgh,* 109 N. Y. 301, 16 N. E. 344.

In *Maitland v. Gilbert P. Co.* and *Daly v. Milwaukee, supra,* it was said, in effect, that so long as the opinion of the expert is based upon undisputed facts or an assumed state of facts warranted by the evidence in some aspect thereof,

and is kept within the field of scientific knowledge, the question calling therefor is not necessarily objectionable because the tendency of the answer is to pass upon some ultimate question to be submitted to the jury for final solution. However, that is somewhat dangerous ground. *Chicago, R. I. & P. R. Co. v. Sheldon,* 6 Kan. App. 347, 51 Pac. 808; *State v. Rainsbarger,* 74 Iowa, 196, 37 N. W. 153; *Dundas v. Lansing,* 75 Mich. 499, 42 N. W. 1011; *Tice v. Bay City,* 78 Mich. 209, 44 N. W. 52; *Jones v. Portland,* 88 Mich. 598, 50 N. W. 731. The safer way is to go no further than to show by the opinion evidence that the particular circumstances proved or assumed are a sufficient producing cause for the effect complained of. No definite rule can be given accurately defining the limits to which such questions can go. The discretionary authority of the trial judge in that field is somewhat broad. It must necessarily be exercised with regard to the particular facts of the case in hand. Any attempt to give a rule more definite than the one commonly given,—that is, that the opinion evidence must not be permitted to extend to the merits of the controversy, passing upon the very question, or one of them, to be submitted to the jury, or to go outside the field of scientific knowledge,—would not improve it. Of course, when that rule is analyzed, as will be discovered by examining the opinion in *Maitland v. Gilbert P. Co.,* the term, "pass upon the controversy to be submitted to the jury," means pass upon some disputed evidentiary matter upon which the final result in whole or in part depends, or pass upon some matter not within the scope of scientific knowledge.

In attempting to harmonize the adjudications on the subject found in the books, one soon discovers that courts have applied the principles stated so variously that the function of expert testimony and that of the jury many times appear to so blend that the best experts in the science of the law cannot discover where the one ends and the other begins. It

would seem that opinion evidence should be sufficiently restrained that such will not be the case, and it is believed that as regards the cases decided in this court that has, generally speaking, been done. It is easy to understand that opinion evidence should be kept within the field of scientific knowledge; also that whether a particular condition of the human system might be produced by a particular physical disturbance, or whether it was or might be produced by a particular immediate cause, is within such field; but not, generally speaking, easy to see that whether a particular physical disturbance as to one person, attributable to actionable fault of another, is the cause of the bodily condition of such person, may be sought for by direct opinion evidence as to the fact in issue. This court has affirmed that, while an expert may testify as to whether wounds found upon the body of a deceased person caused his death, because that is within the realm of scientific knowledge, he may not testify as to how those wounds were inflicted, because that is not within such knowledge. Also whether drinking of water contaminated by typhoid fever germs will communicate typhoid fever, but not whether partaking of the water from a particular source, though so contaminated, caused such results. *Green v. Ashland W. Co.* 101 Wis. 258, 77 N. W. 722.

However, here the question did not necessarily call for any further answer than the witness's opinion as to the immediate producing cause of respondent's diseased condition, as to whether it was by physical violence or other means, and upon an assumed state of facts warranted in one aspect of the evidence, and the physical examination made by the expert. The objection was general. That did not reach the defect, if there were one, in that the question was not sufficiently restricted to prevent the witness, in answering it, from going outside the field of scientific knowledge. The question, therefore, must be regarded as having been unobjectionable. It was really the answer of the witness which was objectionable,

if anything,—the answer that respondent's diseased condition was caused by her fall upon the sidewalk. If the court's attention had been called to the fact that the question was not sufficiently restricted to certainly fence the expert within his legitimate field, it might have caused the question to be changed, or restricted the same, in effect, by admonishing the witness. Nothing of that kind having been done, and no motion having been made by appellant's counsel to strike out the witness's answer, there is nothing in respect to the matter of which appellant can now be heard successfully to complain.

Complaint is made because the court did not confine each question of the special verdict to a single material controverted fact. If counsel were right as to that, in view of all that has been written here in recent years to improve the practice as to such verdicts and give litigants the full benefits that were designed to be afforded by the special verdict statute, it would constitute serious error; but we cannot agree with counsel that the third question, to which our attention is particularly called, is multifarious. The language thereof is this:

"If you answer the second question 'Yes,' had such defective and unsafe condition of the sidewalk existed for such length of time before the accident and injury to the plaintiff as to have made it the duty of the proper city authorities, in charge of its streets and sidewalks, in the exercise of reasonable care and diligence, to have known of and repaired the same before the accident?"

Counsel says that covers the questions of time, discovery, and repair. But there were no such three questions, properly speaking, at issue upon the pleadings. Counsel mistakes the minor parts of one issuable fact for several such facts. That method of treating pleadings in framing a special verdict would go a great way toward re-establishing the mischiefs once existing to a great extent, by shaping the ques-

tions with regard to mere disputes on evidentiary matters instead of the material issues raised by the pleadings. The matter at issue here, referred to by the third question, was this: Had the insufficient condition of the sidewalk existed for a sufficient length of time before the injury complained of to enable the defendant by the exercise of ordinary care to discover and remedy it? No single element thereof could properly have been separated from the others and made the subject of a question. The court's question might well have been made more concise, in our judgment. It might well have been shortened about one half. Unnecessary words in a question usually sacrifice clearness. It is subject to criticism in that it was not confined to the fact in issue. It will be observed that the law applicable to such fact, upon the same being found in favor of respondent, was embodied in the question. That is as serious a fault with the question as is the giving of general instructions, or any instruction, informing the jury what will be the result of a finding one way or the other. The court should not have asked the jury whether the defect had existed long enough to make it the duty of the defendant to discover and repair the same. What the duty of the defendant was under any circumstances, was not a matter for the jury to pass upon, or to be submitted to them for consideration in any aspect of the case. Had the defect existed long enough to enable appellant by the exercise of ordinary care to discover and remedy it before the accident? That was the sole question for the jury to solve. If they solved it in favor of respondent, it was then the duty of the court to hold as a matter of law that appellant was guilty of a breach of duty to respondent.

Complaint is made because the court refused to instruct the jury, at the request of appellant's counsel, as regards the question on the subject of whether respondent was guilty of a want of ordinary care contributing to the injury she received, that if she was guilty of a slight failure to exercise

ordinary care they should answer in the affirmative. Counsel refer to *Jung v. Stevens Point,* 74 Wis. 547, 43 N. W. 513; *Mauch v. Hartford,* 112 Wis. 58, 87 N. W. 816; *Schroeder v. W. C. R. Co.* 117 Wis. 33, 93 N. W. 837; *Shaw v. Gilbert,* 111 Wis. 165, 188, 86 N. W. 188. Those authorities would rule the assignment of error under consideration in favor of appellant, if the requested instruction was full enough to convey the idea which counsel probably intended thereby. An essential in the rule contended for was obviously omitted; that is, that slight want of ordinary care *contributed to produce the injury.* That was fatal to the instruction.

The court was asked to instruct the jury in regard to the question respecting whether respondent exercised due care on the occasion in question,—that since she knew of the defect in the walk it was her duty to use greater care than she would have been required to use to come up to the standard of ordinary care in the absence of such knowledge. That is a correct principle of law. *Collins v. Janesville,* 111 Wis. 348, 87 N. W. 241, 1087; *Devine v. Fond du Lac,* 113 Wis. 61, 88 N. W. 913; *Seaver v. Union,* 113 Wis. 330, 89 N. W. 163. It is an important principle in such a situation as that presented by the evidence in this case. It was, in one aspect of the evidence, vital to the defense. Appellant had a right to have such principle in some appropriate way given to the jury. The language chosen therefor by appellant's counsel does not appear to be subject to criticism. Error was committed.in refusing to give the instruction.

Complaint is made because the court did not confine the instructions to an explanation of the questions, one by one, so as to enable the jury to understand the same and intelligently make answers thereto; that it instructed the jury quite fully in regard to the law applicable to the ultimate facts, contrary to the repeated rulings of this court on the subject. Counsel's criticism upon the learned court's instructions to the jury seems to be well founded. That method of instruct-

ing a jury where a special verdict is taken, has been most distinctly and repeatedly condemned, as evidenced by the following cases: *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 388, 75 N. W. 169; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 219, 78 N. W. 442; *New Home S. M. Co. v. Simon,* 104 Wis. 120, 80 N. W. 71; *Brunette v. Gagen,* 106 Wis. 618, 82 N. W. 564; *Rhyner v. Menasha,* 107 Wis. 201, 206, 83 N. W. 303; *Sladky v. Marinette L. Co.* 107 Wis. 250, 259, 83 N. W. 514; *Musbach v. Wisconsin C. Co.* 108 Wis. 57, 70, 84 N. W. 36; *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; *Byington v. Merrill,* 112 Wis. 211, 88 N. W. 26; *Cullen v. Hanisch,* 114 Wis. 24, 37, 89 N. W. 900; *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 448, 457, 90 N. W. 429; *Gutzman v. Clancy,* 114 Wis. 589, 90 N. W. 1081. If all that has been said condemning the practice of instructing juries, in submitting a case to them for a special verdict, respecting principles of law with which they have nothing to do, and which are of no moment in the case till the judge comes to view the facts found to discover the legal result thereof, is not sufficient to wipe out the last vestige of the prejudicial departure in that regard from the legislative plan in enacting the special verdict statute, we cannot hope to aid in that much-desired consummation by saying more on the subject. It is gratifying, however, that few errors in that respect have recently reached this court. That leads to the belief that the much-desired reformation is nearly complete.

Some complaint is made respecting the conduct of respondent's counsel upon the trial, in that in addressing the jury they stated what would be the effect of certain answers to the special questions. The objection of appellant's counsel to such conduct seems to have been sustained. We cannot discover any prejudicial error in what occurred in respect thereto.

Further complaint is made because of the size of the ver-

dict. It seems large. However, if all the evidence on respondent's part as to the effects of her injury be true, it would take quite a large sum of money to adequately compensate her. It is considered that the verdict is not so large as to indicate bias or prejudice on the part of the jury with sufficient clearness, if at all, to warrant a disturbance of the trial court's ruling on that subject. Probably the evidence, with such aids as the court and jury below had which we do not possess, would fairly permit of an honest, unbiased verdict for the amount complained of.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.