BYINGTON, Respondent, vs. CITY OF MERRILL, Appellant.

| 112 | 211 |
| 114 | 9457 |
| f114 | 9599 |

*November 5 — November 29, 1901.*

*Municipal corporations: Injury from defective sidewalk: Snow and ice: Pleading: Court and jury: Continuity of defect: Special verdict: Form: Instructions to jury: Appeal: Setting aside answers: New trial.*

1. In an action against a city for injuries claimed to have been caused by a defective sidewalk, the complaint need not allege in terms that the walk was so insufficient as not to be reasonably safe for public travel: an allegation that it was out of repair and in a defective, insufficient, and dangerous condition is sufficient. *Rhyner v. Menasha*, 107 Wis. 201, explained and distinguished.

2. Evidence that during the winter a ridge of hard snow or ice had formed in the center of the sidewalk, about four inches high and twelve inches wide at the base, sloping from the highest point at the center to the edges, and that said ridge was rough and slippery, so that a person in using the walk was liable to stumble by his feet coming in contact with the ridge, or to step upon the ridge and fall by his foot slipping upon its sloping and rough side, is *held* sufficient to make it a question for the jury whether the walk was reasonably safe for public travel.

3. Under the provision of a city charter (sec. 97, ch. 32, Laws of 1885), that no knowledge by the city of a defect in a sidewalk causing damage shall be presumed unless such defect shall have existed three weeks before the damage occurred, the defect must have existed three weeks *continuously* in order that the city may be charged with constructive notice; and under ch. 305, Laws of 1899 (exempting municipalities from all liability for damages for injuries sustained by reason of an accumulation of snow or ice upon a highway unless such accumulation shall have existed for three

weeks), a municipality is not liable in such a case unless the defect causing the injury existed *continuously* for three weeks immediately prior to the happening thereof.

4. The insufficiency in a sidewalk which caused injury to plaintiff consisted of a ridge of snow and ice in the center of the walk, about twelve inches wide, four inches high in the center, and sloping towards the sides, together with a covering of hard snow on the level portions of the walk, made slippery by having been walked on and roughened in places by footprints made in soft weather and afterwards frozen. About two weeks before the accident the walk had been covered with heavy wet snow from twelve to eighteen inches deep, and thereafter for some time travel was confined to a narrow path near the center of the walk. *Held,* that the insufficiency which caused the injury had not existed continuously for three weeks prior thereto.

5. If a sidewalk is insufficient for public use it is not in a reasonably safe condition for such use, and *vice versa.*

6. In taking a special verdict issues should not be split up or submitted in various forms.

7. Questions of a special verdict as to whether a sidewalk, at the time and place of an injury, was insufficient and in want of repair, and, if so, whether such insufficiency or want of repair was the proximate cause of the injury, cover the question whether the injury was the result of a mere accident.

8. One question in a special verdict being as to whether the insufficiency of a sidewalk which caused an injury had existed continuously for three weeks prior thereto, it was proper to refuse to submit a question as to whether the walk was insufficient on a certain date within said three weeks.

9. A trial judge in instructing the jury should not use language calculated, under any circumstances, to convey the idea that he has mentally passed upon any one of the material issues to be decided by the jury.

10. The giving of general instructions to the jury in submitting a special verdict is error.

11. Where the supreme court on appeal has set aside a finding of the special verdict as being without credible evidence to support it, the cause will be remanded for a new trial unless there was a motion in the trial court to correct such finding in accordance with the undisputed evidence.

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

Action to recover compensation for personal injuries al-leged to have been caused by the insufficient condition of a sidewalk. It was alleged in the complaint that the side-walk where the accident occurred was out of repair, insuffi-cient, and dangerous in that in the center thereof there was a slippery, uneven ridge of snow about twelve inches wide and four inches high at the center and sloping to the sides. The injury was said by plaintiff to have occurred in this way: As she was walking in the pathway on the outer side of the walk, nearer the center thereof than the outer edge, she stepped upon the side of the ridge of ice, and her foot slipped, causing her to fall and resulting in the injuries com-plained of. The injuries alleged were a fracture of plaint-iff's right leg, a strain of her right thigh and knee, and other injuries.

The issues submitted to the jury are indicated in the fol-lowing verdict:

"1. Was the plaintiff injured on February 23, 1900, by a fall on the sidewalk on the west side of Prospect street, in the city of *Merrill*, at the point alleged in the complaint? *A*. Yes.

"2. If you answer question No. 1 'Yes,' then had ice and snow accumulated on the said sidewalk, at the time and place of the accident, in a rough, uneven, and slippery ridge so as to make the sidewalk at said point and time insufficient or out of repair so as to render it unsafe and dangerous for persons traveling thereon in the use of ordinary care? *A*. Yes.

"3. If you answer question No. 2 'Yes,' had such condi-tion of said walk existed for a period of three weeks or more prior to the time of the accident? *A*. Yes.

"4. If you answer question No. 2 'Yes,' then had such defective condition of said walk existed for such time that the city authorities, in the exercise of ordinary care, ought to have known and remedied it before the accident? *A*. Yes.

"5. Was said condition of said walk the proximate cause of the injury to the plaintiff. *A*. Yes.

"6. Was the plaintiff guilty of any want of ordinary care which contributed to her injury? *A*. No.

"7. If the court should be of the opinion on this special verdict that the plaintiff should recover, at what amount do you fix her damages? A. $1,000."

Judgment was rendered for plaintiff for the amount of her damages as found by the special verdict, and defendant appealed.

The cause was submitted for the appellant on the brief of *John Van Hecke,* and for the respondent on that of *M. G. Hoffman,* attorney, and *Curtis, Reid, Smith & Curtis,* of counsel.

MARSHALL, J. Does the complaint state a cause of action? That is the first question presented for decision. It is contended that this court held in effect, in *Rhyner v. Menasha,* 107 Wis. 201, that an allegation that a public sidewalk is out of repair and is in a defective, insufficient, and dangerous condition, does not state facts showing that municipal duty as to the safety of the walk for public use has not been performed; that a pleading or special verdict, in order to show a breach of such duty, should state expressly that the sidewalk was so insufficient as not to be reasonably safe for public travel. We do not so understand that decision. Certainly the law is otherwise. The court there had under consideration a finding that a street was "defective or in a dangerous condition or out of repair," and it was said, in effect, that such a finding might be true and the street yet be in a reasonably safe condition for public travel, not insufficient or in want of repair, which is the test to be applied in measuring the duty of a municipality in caring for its streets under sec. 1339, Stats. 1898. The vice in the question was in several things being stated in the disjunctive, when either, or some one of them at least, might exist and the street be all that the statute required it to be. The court did not decide expressly, or by reasonable inference, that it is necessary to allege in terms, in an action of this kind, that the public way involved was not reasonably safe for public

use by persons in the exercise of ordinary care, but decided that it must be alleged, proved, and found, in order to support a recovery by the plaintiff, that the public way was in want of repair or insufficient; and that an allegation or finding in that regard, in the language of the statute, or in language embodying the judicial construction of the statute, is necessary. The statute provides that, if damages happen to a traveler " by reason of the insufficiency or want of repairs " of a highway in any town, city, or village, the person damaged may recover compensation therefor of such town, city, or village. A sidewalk or street is not insufficient or in want of repairs within the meaning of the statute, so long as it is, under the circumstances of place, time, nature, and amount of travel, reasonably safe for public use by persons in the exercise of ordinary care. *Wheeler v. Westport*, 30 Wis. 392. It is easily seen that, as said in *Rhyner v. Menasha*, a public way may be defective, yet not be in such a condition as to be insufficient or in want of repair, because, regardless of the defect, the way may be reasonably safe for public use by persons in the exercise of ordinary care, under the circumstances. A highway, though out of repair to some extent, is not, necessarily, in want of repair in the sense of not being free from actionable defects, so long as it is reasonably safe for the legitimate purposes thereof. So in charging or finding the existence of an actionable defect in a public way, either the language of the statute should be used, that is, that the way was insufficient or in want of repair; or the equivalent thereof should be stated, that is, that the way was not in a reasonably safe condition for public use. It is the better practice, in submitting to a jury a question covering the subject, to shape it in this form: Was the sidewalk, at the time and place of the injury, in a reasonably safe condition for public use? and then to instruct the jury that in determining it they should consider the location of the way, the surroundings, the nature and

amount of travel, and all the circumstances shown by the evidence bearing on the question.   But it is perfectly proper to put the question in the form in which the fact is substantially alleged in the complaint in this case, i. e., Was. the sidewalk, at the time and place of the accident, insufficient and in want of repair? — the jury being instructed as to what constitutes insufficiency or want of repair within the meaning of the question.   It is always proper to charge the existence of a fact in the language of the statute, and to submit an issue in respect thereto in language containing the substance thereof as made by the pleadings, with proper explanations.   In this case the pleader alleged that the sidewalk was in a defective, insufficient, and dangerous condition.   That sufficiently informed the defendant that it was claimed that the sidewalk was insufficient or in want of repair, or, in other words, that it was not reasonably safe for public use.

Did the evidence warrant the submission to the jury of the question of whether there was an actionable defect in the sidewalk which caused the injury complained of?   That question was raised on a motion for a nonsuit at the close of plaintiff's evidence, and by a motion for the direction of a verdict, and again by a motion to set the verdict aside and grant a new trial; and the rulings of the court adversely to appellant were preserved for consideration on this appeal.   The question is divisible.   It involves, first, whether the evidence was sufficient to raise the question of whether the sidewalk was reasonably safe for public use at the time of the accident; second, if such insufficiency existed, whether appellant had knowledge, actual or constructive, thereof in time to remedy the defect; and third, whether the insufficiency had in fact existed for the full period of three weeks continuously immediately preceding the accident.   The second and third propositions may be considered as one for the purposes of this cause.

The evidence indicated that the defect consisted of a ridge of hard snow or ice that had formed during the winter in the center of the sidewalk about four inches high, and twelve inches wide at the base, sloping from the highest point of the ridge at the center thereof to the edges, and in a rough and slippery condition, so that a person in using the walk was liable to stumble by his feet coming in contact with the ridge, or to step upon the ridge and fall by his foot slipping upon its sloping and rough side.  The law is too well settled to require discussion at this time, that the mere slippery condition of a walk, caused by ice forming thereon evenly, or substantially so, or the mere existence of a roughened condition of the surface of a walk caused by footprints in soft, wet snow and its freezing in that condition, does not render such walk insufficient or in want of repair within the reasonable meaning of the statute; but that an accumulation of snow or ice on a walk in a ridge or rounded form, so as to form an obstruction to the use thereof with reasonable safety, by persons in the exercise of ordinary care, does constitute such insufficiency and want of repair.  Nothing more can be said on that subject than has heretofore many times been said by this court.  Within all reasonable bounds, the question involved in a case like this, as to whether an accumulation of snow or ice in such form as to render the sidewalk insufficient existed, is for the jury. We are not prepared to say from the evidence in the record that the question was removed from that sphere and that it should have been decided by the court as one of law.  In a similar case in Massachusetts the verdict of the jury in favor of the plaintiff was sustained.  *Luther v. Worcester,* 97 Mass. 268.  In *Kling v. Buffalo,* 72 Hun, 541, a similar case, involving somewhat peculiar circumstances, a different conclusion was reached.  The sidewalk in the latter case was eight feet wide, and was in such a condition as to be sufficient to accommodate public travel outside of that part

occupied by the ridge of ice in the center thereof. The winter was one of exceptional severity, so that it was practically impossible for the municipality to keep its sidewalks free from such accumulations of ice. The court applied the rule that the law never obliges a person to do impossibilities. "*Lex non cogit ad impossibilia.*" The decision also went largely upon the theory that a person, in the exercise of ordinary care, under such circumstances as characterized the happening of the injury in question, is bound to expect inconvenience from accumulations of ice; that in the inclement season of the year, in exceptional situations, exceptional care must be exercised by a traveler; that he cannot depend upon the municipality doing those things for his safety that are beyond all reason under the circumstances. This court laid down the same doctrine in *Hyer v. Janesville,* 101 Wis. 371, and *Dapper v. Milwaukee,* 107 Wis. 88, and in many other cases. The rule that mere slipperiness of a walk, caused by ice on the surface thereof, does not render it insufficient within the meaning of the statute, rests on that doctrine, as does likewise the rule that, a mere roughness of the surface of a walk, caused by footprints made in a soft snow covering thereof and the freezing thereof in that condition, does not render such walk insufficient for public use. It would be beyond the bounds of reason to require a municipality to guard against danger from such difficulties in this climate. Hence its duty, as regards snow and ice on its walks, under sec. 1339, Stats. 1898, is limited to keeping them reasonably clear of such accumulations as in some degree render such walks dangerous for public use, by constituting to some extent, at least, an actual obstruction to travel. It is considered that there was some evidence tending to establish such an insufficiency in this case, so as to carry the question to the jury.

Notwithstanding the insufficiency of the walk, the defect was not actionable unless appellant had notice thereof, act-

ual or constructive, for such length of time as to charge it. with a breach of duty in not having remedied the defect, and unless the defect actually existed for the full period of three weeks prior to the injury. The charter of appellant provides that knowledge of an insufficient condition of a sidewalk shall not be found, so as to fix liability upon the municipality for the consequences thereof, except upon satisfactory evidence that one or more of the aldermen of the ward in which the sidewalk is located had knowledge thereof for a sufficient length of time to enable the city, in the exercise of ordinary care, to remedy the same, or, upon satisfactory proof that the deficiency existed continuously for a period of three weeks immediately preceding the accident, but that the existence of such fact shall not, *per se*, be decisive on the question of whether the city had such knowledge or not. It is considered that such is the fair meaning of the charter provision on the subject. The language thereof, so far as relates to this case, is as follows:

'The city shall not be liable for damages caused by any sidewalk being in a defective or dangerous condition or out of repair, unless it be shown that, previous to the happening of the same, one of the board of aldermen of the ward in which the same is located had knowledge thereof; and no knowledge of such condition shall be presumed unless the defect out of which the same occurred existed three weeks before such damage occurred: provided, however, that nothing herein contained shall be so construed as to mean that knowledge is to be presumed because such three weeks had elapsed.' Sec. 97, ch. 32, Laws of 1885.

Sec. 1339, Stats. 1898, as amended by ch. 305, Laws of 1899, goes further, and expressly exempts municipalities from all liability for damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation shall have existed for three weeks. In order to appreciate the force of that provision as applied to this case, it must be borne in mind that the word "highway," as used in sec. 1339, includes streets in cities

and villages (*Huston v. Ft. Atkinson*, 56 Wis. 350, 354), and that a street in a city includes the sidewalks. It is thus that sec. 1339 has always been held to apply to streets in cities and villages, including that portion thereof especially devoted to the use of pedestrians. The law of 1899 and the provisions of the city charter of appellant to which we have referred, pretty clearly indicate a legislative policy to, exempt municipalities from liability for injuries caused by impairment of the usefulness of sidewalks and other public ways by accumulations of ice and snow, except in extreme cases of neglect. That must be taken into consideration in determining the full scope of the legislative will. The meaning of the words of the statute is not to be restrained at all because of any interference thereof with common-law rights, because the liability of municipalities in cases like this is wholly a creature of the statute. The legislature, as has often been said, being the creator of the right to compensation for injuries caused by the insufficiency of public ways, can take it away at any time, even after the happening of an injury, or can affix any condition to its enjoyment that in its judgment the public welfare demands. *Schaefer v. Fond du Lac*, 99 Wis. 333; *Daniels v. Racine*, 98 Wis. 649.

We agree with the construction of the city charter of appellant and of the law of 1899 contended for by appellant, that the manifest purposes thereof were to preclude constructive notice of the insufficiency of a street being found against the municipality in the absence of proof of its existence continuously for the period of three weeks immediately preceding the happening of the result complained of, and to take away all liability of the municipality in such cases as this, unless the insufficiency causing the injury existed continuously for three weeks immediately prior to the happening thereof. Notwithstanding some criticisms upon the charge of the circuit judge, made by appellant's counsel, it is considered that he attempted to instruct the jury fairly in

regard to question No. 3, covering the subject under discussion, in harmony with what we have said. The question was as follows: "If you answer question No. 2 'Yes,' had such condition of said walk existed for a period of three weeks or more prior to the time of the accident?" The question would be more satisfactory to us if worded substantially thus: If you answer the second question "Yes," had the conditions as to snow and ice, which rendered the walk insufficient for public use, been the same for the whole of the three weeks immediately preceding the happening of the injury as at the time thereof? But the jury probably understood the question submitted that way. They were told in the instructions in regard to it that the word "condition" referred to the insufficiency mentioned in question No. 2, the existence of an accumulation of ice and snow, rendering the walk unsafe for the use of travelers in the exercise of ordinary care, and that if such condition had not existed for three weeks or more prior to the accident, but was interrupted by a heavy fall of snow removing the danger for a time, running into or wholly within the three weeks immediately preceding the accident, then the condition mentioned in question No. 2 did not exist for three weeks prior to the happening of plaintiff's injury within the meaning of the question, and that it should in that event be answered "No."

The only reason seen for saying that fault was committed in the instructions which may have resulted in preventing the jury from answering question No. 3 intelligently and finding the fact involved, if there was such failure, lies in a part of the instructions to which we will refer. The attention of the jury was specially directed to the undisputed evidence that a heavy fall of snow occurred within three weeks before the accident, which wholly covered up the ridge of snow or ice in the center of the walk; and they were told that such circumstance required the question to

be answered in the negative unless they were satisfied from the evidence that, notwithstanding the ridge of ice, if there was one before the heavy fall of snow referred to, was wholly covered thereby, it still remained dangerous. Whether the jury understood the meaning of the word "dangerous" to be the danger arising from the insufficiency of the walk which had been mentioned, and which was covered by question No. 2, is in some doubt. If they did not so understand the instruction, they were misled. Whether the existence of the ridge of ice on the sidewalk was dangerous was not the real question the jury were called upon to deal with, or at least it was not the question which they should have been called upon to deal with, which was whether the sidewalk, in view of the ridge of snow or ice as the same existed at the time plaintiff was injured, was not reasonably safe for public use, and whether that condition of things — insufficiency of the walk from such cause — had existed continuously for three weeks immediately prior to the accident. It seems that the jury may not have gotten that idea, because we are unable to discover in the evidence any warrant for the answer to the question consistent with any other view.

Looking at the evidence as favorably as we reasonably can for respondent, the condition which the jury said rendered the walk insufficient was caused by this combination of circumstances: A substantially level surface of the sidewalk, including the whole region thereof outside a space about twelve inches wide near the center, the level portions covered with hard snow, made slippery by having been walked upon, some roughness here and there, caused by footprints made in the snow in soft weather and the freezing of the snow thereafter, so that a person walking thereon was liable to slip or be momentarily turned aside; a ridge of ice covering twelve inches in the center of the walk, rising gradually, with sloping, rough sides, caused by

footprints in the manner above indicated, to a height above the general level of the snow covering, before mentioned, of three or four inches, so that a person, by momentarily turning toward the ridge while walking along the side thereof, was liable to step thereon and slip or stumble and fall to the hard surface of the walk and across the raised portion thereof. It will be readily seen that one of the most dangerous features of that situation was the hard surface of the walk, particularly the situation that rendered probable the fall of a person across the icy ridge. Another of the dangerous features was the existence of the rough pathway along the side of the ridge, so that a person, in walking, was liable to make a misstep or in some other way be caused to turn slightly toward the ridge, coming in contact therewith, and stumble or slip and fall upon the hard surface of the walk. With those elements of danger in mind, view the situation as it was according to the undisputed evidence about two weeks before plaintiff was injured. The sidewalk was then covered with heavy, wet snow from twelve to eighteen inches deep. The travel was thereafter, for a considerable period of time, confined to a narrow path near the center of the walk. Granted that the icy ridge existed before such fall of snow, and existed under the snow thereafter, we still have an entirely different situation from that at the time of the accident. Granted that after the fall of snow a person in walking near the center of the walk was liable to slip because that part of the hard surface of the walk was the highest, common sense teaches that such an occurrence would not have been attended with any danger of personal injury. In that situation, if a person had fallen at all, he would have come in contact with the soft snow. At the time of the injury a fall necessarily meant coming in contact, with great violence, with the hard, icy surface of the walk, particularly the icy ridge in the center thereof. It seems clear that the icy ridge in the center of the walk, which the jury found

existed for more than three weeks prior to the happening of plaintiff's injury, was but one of several circumstances in combination, which created the dangerous condition complained of, no one of which existed except the icy ridge after the heavy fall of snow for a considerable length of time. When the statute says no action shall be maintained to recover damages caused by an accumulation of snow and ice upon a highway unless it shall have existed for three weeks, it means, unless it shall have existed for that period of time under such circumstances as to render the insufficiency in the traveled way, which caused the injury, continuous for three weeks. To say that the mere existence of an accumulation of ice for more than three weeks, under conditions entirely different from those which rendered it an efficient element of danger for a small part of such period, satisfies the statute, would fail most completely to give effect to the manifest legislative purpose. It is considered that, viewing the question submitted to the jury covering this feature of the case, with the instruction in respect thereto, as submitting the issue so that they comprehended the full scope thereof, their finding was contrary to the undisputed evidence.

It is suggested that the court erred in refusing to submit, at appellant's request, the following question: "Was the sidewalk at the place and time of the accident in a reasonably safe condition for persons to walk upon while in the exercise of ordinary care?" Counsel seem to suppose that question No. 2, submitted by the court, wherein the jury were asked to decide whether, at the time and place of the accident, there was an accumulation of snow on the walk in a rough, uneven, and slippery ridge, so as to render the walk insufficient for public use, did not include the element of whether the walk was reasonably safe for persons to travel upon in the exercise of ordinary care. We have already spoken upon that subject. If the sidewalk was insufficient

for public use it was not in a reasonably safe condition for such use, and *vice versa*. A finding of fact in answer to a question submitted in one form cannot be added to by an answer to a question in a different form but meaning the same thing. It is not a proper practice to split up issues or submit them, in taking a special verdict, in various forms. The vice of that course has recently received the earnest attention of this court in the hope that what was then said might cause the bad practice to be indulged in less, if not entirely prevented. *Mauch v. Hartford, ante,* p. 40.

Complaint is made because the court refused to submit this question: "Was the injury which plaintiff received the result of an accident for which neither party was at fault?" Here again we see failure to comprehend the essentials of a special verdict. Such essentials are confined to the material issues made by the pleadings and controverted on the evidence, and no practice is better calculated to defeat the very object of such a verdict than that of submitting questions differing in form, each covering in its entirety a particular issue, or one of the questions so covering an issue, and others covering some element thereof; or submitting a question covering a material controverted issue, with another, as was desired in this case, in such form as to invite inconsistent answers. Such a method of confusing and trapping jurors should be guarded against at every step in executing the special verdict statute. The learned court in this case, by one question, submitted the issue as to whether the walk was, at the time and place of the injury, insufficient or in want of repair; and in the event that such question was answered in the affirmative the jury were asked by another question to decide whether the insufficiency or want of repair was the proximate cause of the injury complained of. The answers to those questions necessarily covered the subject of whether the injury to respondent was the result of a mere accident, and the question requested on

that subject was very properly refused.    The firmness which the learned judge exercised in rejecting useless questions receives our commendation.    Such firmness will do much to correct the false notions that have grown up in some minds as to the wisdom of the special verdict statute.

Further complaint is made because the court refused to submit to the jury this question: "Was the sidewalk in question, at the place where plaintiff was injured, in a reasonably safe condition on February 5, 1900?"    The question was properly rejected.    It was covered by questions 2 and 3.    It was in any event but a mere element of the issue as to whether the insufficient condition of the walk, which caused the accident, if it was so caused, existed for three weeks continuously immediately prior thereto.

Many other complaints are made of refusals to submit questions, but what we have said would only need to be repeated in answering them.    Such complaints are made, as it seems, unmindful that this court has condemned, over and over again, the doing of the very things which counsel insist the learned trial court erroneously refused to do.    An earnest study of the many decisions of this court in respect to the proper method of taking a special verdict is suggested.    The verdict, as framed by the trial court, covered every issue made by the pleadings that was controverted on the evidence.

The circuit judge, in several instances, in the instructions to the jury, spoke of the condition of the walk as if insufficiency thereof for public use, at the time and place of plaintiff's injury, was established by the evidence, or to be taken that way by the jury, as, for example, this language was used in respect to the question of whether, if the jury found in answer to question No. 2 that the walk at the time and place of the injury was insufficient for public use, such condition had existed for such a length of time that the defendant, in the exercise of ordinary care, ought to have dis-

covered and remedied it before the accident: "If you are
satisfied, from all the evidence and circumstances of the case,
that the defective condition of said walk had existed for
such a time that the city authorities, in the exercise of ordi-
nary care, should have known of and remedied it before the
accident, then you should answer this question No. 4 'Yes.'"
Probably the court, in using that language, had in mind that
the question he was talking to required an answer only in
the contingency that the jury found, in answer to question
No. 2, that the sidewalk was in fact in an insufficient con-
dition at the time indicated in the fourth question. The
jury probably listened to the instruction with that in mind
and were not misled. However, it was a mistake to use lan-
guage reasonably calculated under any circumstances to con-
vey the idea that any one of the material issues to be decided
by the jury had been mentally passed upon by the judge.
Jurors are liable to take such language as is complained of
as indicating a leaning on the part of the judge as to where
the truth lies in a matter which they are to decide. The
court could just as easily have said, in terms, or plainly, in
effect: If you say in answer to question No. 2 that the side-
walk at the time and place of the injury was insufficient for
public use, or in other words was not reasonably safe for
persons to travel upon in the exercise of ordinary care, then
question No. 4 must be answered, and in that event, if you
are satisfied from all the evidence and all the circumstances
established thereby, bearing on the question, that the insuffi-
cient condition of the walk had existed for such a length of
time that the officers of the defendant, by the exercise of
ordinary care, could have discovered and remedied the same,
you should answer the question "Yes."

What we have said covers all matters submitted for con-
sideration that require special mention in this opinion, ex-
cept the course taken by the circuit judge in giving general
instructions to the jury. The erroneous, prejudicial practice of

giving such instructions in submitting causes for special verdicts seems to have become so firmly intrenched in some jurisdictions that a correction thereof is attended with many and serious difficulties. The correct practice has been repeatedly, in recent years, laid down by this court. It is not perceived why, in view of the many decisions rendered upon the subject, the erroneous practice is continued, in the very face of certain reversal, to the great prejudice of the successful party below, whoever he may be. It is much to be hoped that we shall see less of such erroneous practice in the future than we have seen in the past. No reason is perceived why further violations of the law in regard to the proper method of instructing juries, in connection with the taking of special verdicts, should occur. Certainly, if a reason does exist, we cannot hope to remove it by anything further we can say on the subject. What has been many times said leaves no room to say more. *Kohler v. West Side R. Co.* 99 Wis. 33; *Worachek v. New Denmark M. H. F. Ins. Co.* 102 Wis. 81; *McDermott v. Jackson,* 102 Wis. 419; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 318; *New Home S. M. Co. v. Simon,* 104 Wis. 120; *Musbach v. Wis. C. Co.* 108 Wis. 57, 70.

We are not unmindful of the fact that the real legislative purpose of the special verdict statute, that of securing a decision, by the jury in a cause, of each material issue made by the pleadings and controverted on the evidence, separate from any other issue and entirely uninfluenced by any thought as to the final result to be reached by an application of the law to the facts requiring a general finding, or any general consideration by the jury at all of the case as a whole, including the law and the facts, and entirely uninfluenced, so far as practicable, by any knowledge of the law in respect to the result of their findings, and that a practice inconsistent therewith is, by reasonable inference, prohibited by the

statute, has not always been fully appreciated and firmly enforced even by this court.   Errors of trial courts in the administration of the statute have occurred naturally and were excusable.   But the time for such errors as we are now considering has long since passed.   Reasonable attention and obedience to the decisions of this court, which, doubtless, all concerned in the administration of the law in trial courts will cheerfully give, will prevent the recurrence thereof. Here the learned circuit judge, in the opening lines of his instructions, attempted to give the jury, as appears, a general idea of all the principles of law applicable to the case,— principles with which they had nothing whatever to do, but which were well calculated, by the manner in which they were stated by the learned court, to inform the jury how it was necessary for them to answer the questions submitted in order to enable the plaintiff to recover.   That was clearly reversible error.   A trial judge, unless he desires to address a jury generally in regard to their duty to impartially decide the issues in the order in which they are submitted and wholly uninfluenced by any consideration other than the evidence given in the court, which he may properly do and to any length which he may see fit, should confine his instructions to an explanation of each question by itself and such instructions in respect thereto as are reasonably necessary to enable the jury to intelligently consider and answer it.   The rule in that regard, and those to which we have referred as to the proper manner of framing special verdicts to the end that there shall be, so far as practicable, but one question for each material issue made by the pleadings and controverted on the evidence, concisely worded so as to admit of a direct answer, must be firmly enforced.   That is the only effective method, as it seems, to accomplish what was expected of the special verdict statute and rescue it from the prejudice growing out of a bad practice, which has given legitimate ground

for believing that it is often a means for defeating rather than promoting justice.   It was conceived and brought forth in wisdom, but, like many good laws, it may be bent so far away from its legislative purpose as to be an instrument of mischief; but the fault in that regard is with those who administer, not with those who made, the law.

The judgment must be reversed for error of the court in giving general instructions to the jury in connection with the submission of the case to them for a special verdict, and because the undisputed evidence shows that the insufficient condition of the sidewalk, which the jury found existed at the time of plaintiff's injury and which was the proximate cause thereof, did not exist continuously for three weeks immediately prior to the accident, so as to satisfy the statutory condition, in that regard, of plaintiff's right to recover compensation for her injuries.   The court should have granted a nonsuit upon appellant's motion therefor at the close of plaintiff's evidence.   Failing in that, the motion for the direction of a verdict should have been granted, and failing in that the verdict should have been set aside and a new · trial granted on appellant's motion therefor.   The third question covering the issue in respect to whether the condition of the sidewalk, found by the jury to have existed at the time of the accident in answer to question No. 2, existed for three weeks continuously immediately prior thereto, should have been answered in the negative.   If a motion had been made to correct the answer given by the jury by changing it to the negative in conformity with the undisputed evidence, and the court had ruled adversely to the appellant, this court could reverse the judgment, direct the verdict to be corrected, and a judgment of dismissal, with costs in favor of appellant, to be rendered on the verdict as corrected.   *Dummer v. Milwaukee E. R. & L. Co.* 108 Wis. 589, 593; *Wanzer v. Chippewa Valley E. R. Co.* 108 Wis.

319, 326; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331. But as the record stands we must reverse the judgment and remand the cause for a new trial.

*By the Court.*— So ordered.

On January 28, 1902, a motion by the respondent for a rehearing was held to have been waived.