Cook Land, Construction & Producing Company, Respondent, vs. Oconto Company, Appellant.

*January 10—January 28, 1908.*

*Logs and timber: Wrongful cutting: Statutory damages: Good faith: Trial: Special verdict: Inconsistent answers.*

1. In an action for wrongfully cutting timber, where under sec. 4269, Stats. (1898), the defendant is only liable for actual damages if the cutting was done in good faith, it is not error to submit questions of a special verdict, bearing on the question of good faith, in substantially the words of the proviso of such section.
2. In an action for wrongfully cutting timber, where under sec. 4269, Stats. (1898), the defendant is only liable for actual damages if the cutting was done in good faith, the jury in answer to one question of the special verdict found that the defendant in good faith cut and removed the timber from the lands believing its title to be valid, and in answer to another question found that at or before the cutting and removal the defendant was notified of the facts upon which the title under which plaintiff claimed was based and which rendered the defendant's title invalid. It was conceded that part, if not all, of the timber was removed after such notice was given. *Held,* that the answers were inconsistent, necessitating a reversal of the judgment.

Appeal from a judgment of the circuit court for Oconto county: James O'Neill, Judge. *Reversed.*

This is an appeal from a judgment in an action for trespass in which statutory damages were awarded. The respondent claimed title to the land from which the timber was

cut by the appellant. The appellant admitted the cutting and removing of the timber, but denied the plaintiff's title and that the amount cut was as alleged in the complaint. The appellant then set up as a defense that the timber was cut and removed in good faith and without notice of adverse claim, and consequently, if liable at all, its liability was limited to actual damages, under sec. 4269, Stats. (1898). Respondent's title was based upon tax deeds issued upon sales of 1879, 1880, 1881, and 1882, and from mesne conveyances passing through Mrs. Spies and one Jacob Spies, its immediate grantor. By a bill of sale dated February 27, 1900, executed by William Chase, the ostensible owner, the appellant acquired the right to cut the timber from the land described and other lands. Upon this bill of sale there was a pencil memorandum, written by a former employee of the appellant, as follows:

"Jacob Spies, Jr., served verbal notice January 8, 1903, that he owned the N. E. N. E. and N. E. S. W. of section 30–30–19, included in the within bill of sale."

The appellant did not successfully attack the title of the respondent, and upon the trial the issues were the amount and value of the timber removed and the value of the manufactured product and whether the timber was cut in good faith within the meaning of sec. 4269. This would determine whether the recovery should be the actual damage sustained by reason of such cutting or statutory damages under sec. 4269, viz., the market value of the manufactured product while in the hands of the trespasser.

The case was submitted to the jury in the form of a special verdict. By the answer to the first question the jury found that the stumpage value of the timber cut by appellant from the N. E. ¼ of the S. W. ¼ at the time it was cut was $754.74; by the answer to the second question that the stumpage value of the timber so cut from the N. E. ¼ of the N. E. ¼ was $816.73; by the answer to the third question that the mar-

ket value of the lumber manufactured from the timber so cut on the first description while in appellant's possession was $4,748.81; by the answer to the fourth question that the market value of the lumber manufactured from the timber so cut from the second description while in appellant's possession was $3,603.01; by answer to the sixth question that the appellant in good faith entered upon the land under such title believing the same to be valid. The seventh and eighth questions and answers are as follows:

"(7) Did the defendant in good faith cut and remove such timber from the lands believing such title to be valid? A. Yes.

"(8) Was Ellis, the superintendent of the defendant company, notified about the month of January, 1903, of the facts upon which Mrs. Spies's title was based and which rendered the title of the *Oconto Company* invalid and that Mrs. Spies claimed the title to the lands in question? A. Yes."

Counsel for respondent moved to change the answer to question No. 7 from "Yes" to "No" and for judgment on the verdict. Appellant moved to change the answer to the eighth question from "Yes" to "No" or to set aside the verdict and grant a new trial, setting forth, among other reasons, that the answers in the special verdict were inconsistent. The court denied both motions, holding that the answers to the several questions were not inconsistent, and directed judgment for the respondent for the amount of statutory damages, being $8,351.82, and costs. From this judgment the appeal is taken. Other pertinent facts are referred to in the opinion.

For the appellant there were briefs by *Gill & Chase,* attorneys, and *Spooner & Ellis,* of counsel, and oral argument by *Fred C. Ellis.*

For the respondent there was a brief signed by *Greene, Fairchild, North & Parker,* of counsel, and *V. J. O'Kelliher,* attorney, and oral argument by *H. O. Fairchild.*

BASHFORD, J.  The question most strenuously urged upon the attention of the court relates to the inconsistency of the answers of the jury to questions No. 7 and No. 8.  These questions both involved the good faith of the appellant in cutting and removing the timber.  The answer to the seventh question finds that the appellant in good faith cut and removed such timber believing his title to be valid.  The eighth question presents in a special form the same controverted question, and in the answer thereto the jury finds that the appellant was notified in January, 1903, of the facts upon which the adverse title was based and which rendered appellant's title invalid.  It is conceded that part, if not all, of the timber was removed after such notice was given, although part, if not all, of the timber had been cut prior to that date. Counsel for both parties at the time the verdict was rendered deemed the answers to the questions inconsistent, as is indicated by the motions to change the answers in the manner already stated.  The court denied respondent's motion to change the answer to question No. 7 from "Yes" to "No," and there was no exception to this ruling; and denied the appellant's motion to change the answer to question No. 8 from "Yes" to "No," to which proper exception was taken. In passing upon these motions the court stated:

"That the eighth question and its answer determine the rights of the parties.  There is not necessarily a conflict between the seventh and eighth questions and the answers thereto."

Questions No. 5, No. 6, and No. 7 were submitted substantially in the words of the statute as found in the proviso of sec. 4269.  This form of submission has been approved by this court.  *Byinglon v. Merrill,* 112 Wis. 211, 88 N. W. 26.  The seventh question was therefore proper, and its answer also determines the rights of the parties if the eighth question and answer are stricken out.

Counsel for respondent contends that the answer to the seventh question was made by the jury in accordance with the instruction given by the court, which was erroneous and misleading. In the charge relating to the seventh question the jury were told, in substance, that if they found that the appellant was informed of the nature of the adverse claim to the land and *was warned not to cut the timber,* and he went, nevertheless, and cut and removed the timber, then they should find that the appellant did not act in good faith. Respondent's counsel insist that the jury acted upon the instruction in answering the seventh question in the affirmative, and further contend that the language of the charge as italicized is erroneous and misleading. The contention may be correct, but it is to be noted that there was no exception to the submission of the seventh question or to the charge of the court relating to the warning given to the defendant; nor is there any exception to the refusal of the court to change the answer to question No. 7. So far as respondent is concerned, the seventh question was properly submitted under proper instructions and properly stands in the record, and full effect must be given to the answer. After the verdict was rendered respondent's counsel did not move to strike out the seventh question and answer, but his motion was to change the answer, which must have been made upon the assumption that the seventh question was properly submitted and under proper instructions.

Moreover, it is to be noted that the court in the charge given with respect to the seventh question says: "You will carefully apply these instructions in answering each question in which good faith is involved;" and adds in the same connection:

"The burden is upon the defendant to prove that the cutting and removal was in good faith. So, whether Ellis in January, 1903, was notified of the facts upon which Mrs. Spies's title was based and showing the invalidity of defendant's title is important on this question whether the cutting

and removal of the timber was in good faith, believing the title was valid. The jury will here apply the rules given in other portions of the charge on the subject of good faith."

And further:

"The instructions which the court will give you under the eighth question involving an inquiry as to whether Ellis was informed of the facts upon which Mrs. Spies's title was founded will be pertinent in answering the seventh question."

It appears that the jury had some difficulty in arriving at the answers to the last two questions and came in for further instructions. The court then said, "Now, gentlemen, the inquiry involved in the eighth question is very important in answering the seventh question," again emphasizing the fact that the appellant's good faith was involved in the answers to these questions. It is clear upon this record that each of these questions embraced the same issuable fact and that the answers are in direct conflict. We must hold, therefore, that the answers to questions No. 7 and No. 8 are inconsistent. This conclusion necessitates a reversal of the judgment and obviates the necessity of a consideration of the alleged inconsistencies of the answers to the first four questions.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.