GUTZMAN, Respondent, vs. CLANCY, Appellant.

*April 23—June 19, 1902.*

114        589
e116      ᵒ342
116        ⁷343

*Assault and battery: Mutual assaults: Counterclaim: Evidence: Objections: Exceptions: Instructions to jury: Special verdict: Improper remarks of counsel.*

1. In the course of a continuous encounter, one party at one time and his opponent at another may be guilty of assault, so that each may be entitled to recover damages from the other.

2. In an action for assault and battery defendant may counterclaim damages resulting from any assault committed on him by plaintiff in the course of the encounter, although he himself was the original aggressor. The word "transaction" as used in sec. 2656, Stats. 1898, is broad enough to include the entire, continuous physical encounter.

3. After defendant had introduced extracts from plaintiff's deposition taken under sec. 4096, Stats. 1898, it was not a reversible error to permit plaintiff to introduce, over a mere general objection, the whole of the deposition, where parts of it qualified and explained the extracts introduced, although other parts were inadmissible.

4. In an action for assault and battery it was not error to admit evidence as to the degree and duration of plaintiff's disablement, to show the extent of his injuries for which general damages were claimed, where the jury were instructed not to allow any damages for loss of time because not pleaded.

5. An exception to the refusal to give a requested instruction without modification is not available unless taken at the trial, the right to except after the trial being confined by sec. 2869, Stats. 1898, to the charge itself.

6. Failure to object at the time to remarks of counsel in the argument to the jury, so as to give counsel an opportunity to correct or the court to rule, will be deemed a waiver of objection.

7. Remarks of plaintiff's counsel in his closing argument, to the effect that he knew defendant to be a man to whom money was of more importance than honor, were improper as an attempt to state facts as of counsel's own knowledge and not by way of inference from the evidence, and, in the absence of a proper ruling in response to defendant's objection, constituted prejudicial error.

8. Exceptions to instructions upon the ground that they are contrary to law and the evidence do not raise the question of the propriety of giving them to the jury generally, without indicating their applicability to the questions of the special verdict.

9. The characterizing of instructions as being given at the request of one party or the other, or the failure to so characterize them, is not ordinarily reversible error. In the case of a special verdict the better practice is to make no distinction between that which originates with the court and that which originates with either counsel.

10. A charge which informs the jury of the effect upon the rights of the parties of the answers to questions in a special verdict, is erroneous.


APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

Plaintiff was janitor of a certain building in Oshkosh, and defendant was one of a firm renting one of the stores contained therein. Some controversy arising as to the proper place for doing work in repair of sewers, and words and epithets passing between the parties, a personal encounter took place. Each charged the other with being the aggressor, and the defendant especially charged that the plaintiff, even if not guilty of the first assault, was guilty of using more force than was necessary in repelling the assault, thereby causing the defendant injury, for which he counterclaimed.

As a result of the trial, the jury found a special verdict as follows: (1) Defendant committed the first assault; (2) party first assaulted did not use more force than was reasonably necessary in repelling the assault; (3) assess plaintiff's damages at $350; (4) if the defendant has judgment, he is not entitled to any damages on his counterclaim. Motion for a new trial was overruled, and judgment for plaintiff for the amount of damages specified in the verdict was entered, from which the defendant appeals.

For the appellant there was a brief by *Thompson, Harshaw & Thompson,* and oral argument by *A. E. Thompson.*

For the respondent there was a brief by *Barbers & Beglinger,* and oral argument by *Charles Barber.*

DODGE, J. This is a plain case of a debate commencing in words and terminating *vi et armis;* the one phase presenting about as much of appeal to pure reason as the other. If each party had been satisfied to merely enforce his arguments by words upon the ear of the other, he might have claimed victory without peril of appeal and reversal; but, when he sought to impress his logic upon the nose and eyes of his opponent, he brought the discussion within the arbitrament of the courts. And after all, the really important question— where the sewer leaked—will not be settled nearly so conclusively as it might have been by a few minutes' diligent use of a spade. But however unworthy of intelligent beings the whole proceeding may have been, the courts, being invoked, must treat the question presented with the gravity due to more worthy subjects of litigation. The assignments of error are numerous; the subjects of debate much more so; but many of them are either so immaterial to the result, or so without proper objection and exception, as not to justify examination or decision. We proceed to consider the more important.

Error is assigned upon a ruling that the jury could not,

under any finding of the facts, make an award of damages to both parties, although the one first assaulted might, by excessive force, have become guilty of an assault on the other. This ruling is claimed to contravene the doctrine of *Shay v. Thompson,* 59 Wis. 540, 18 N. W. 473, and *Pelton v. Powell,* 96 Wis. 473, 71 N. W. 887. If so, however, that of itself could not require reversal, for the jury have negatived the existence of facts to warrant any award to defendant by finding not only that he commenced the affray, but also that plaintiff did not use any unnecessary or excessive force. Although the question may not affect the result of this appeal, it will, however, still be an important one in case the parties persist further in this litigation, and the duty to decide it seems to be imposed on us.

That, in the course of the same fracas, one party at one time and his opponent at another may be guilty of assault, so that each may be entitled to recover damages, seems to be entirely settled by the authorities. *Dole v. Erskine,* 35 N. H. 503; *Darling v. Williams,* 35 Ohio St. 58; *Barholt v. Wright,* 45 Ohio St. 177, 181, 12 N. E. 185; *Shay v. Thompson, supra;* Cooley, Torts (2d ed.) 190. The original aggressor continues such so long as the other restrains himself within the bounds of defense, but, when the latter exceeds those bounds by using more than necessary force, he thereupon becomes aggressor, and liable for such damages as he thereby inflicts. As the principle is stated in *Dole v. Erskine, supra,* and most of the other cases, there are, in effect, two assaults, one succeeding the other, separated, indeed, by only a moment of time, but as effectively in law as if a day had intervened, so that they are different transactions. This sounds well on paper, and is perhaps too well supported by authority to be now repudiated; but we confess serious difficulty in applying it to the ordinary physical encounter, where victory may be continually shifting her perch from one combatant to the other, and where each, as he gains the advantage, change

from defender to aggressor. It is likely to be extremely difficult for juries to ascertain whether a blackened eye or flattened nose occurred at a moment of illegal attack or lawful defense. However, as the law seems well settled, those difficulties we may leave for solution by the trial courts and their juries.

There being a possibility of two rights of recovery resulting from one continuous encounter, the next question arising is whether they may be subject of counterclaim in the same action, so that the jury may make allowance to each, and, setting off one against the other, give ultimate recovery for only the balance to him most injured by wrongful acts of the other. Counsel does not cite any authority for a favorable answer to this question, unless, as he contends, *Pelton v. Powell,* 96 Wis. 473, 71 N. W. 887, is such. That case does not decide the exact question. There the plaintiff claimed that, in the entire affray, defendant was the aggressor, while defendant claimed that all his acts were defensive, and that the same acts set forth in the complaint constituted an assault on him by plaintiff, for which he counterclaimed damages. The court held that the transaction set up by the counterclaim was identical with that in the complaint, and therefore the defendant might plead those acts as a counterclaim arising out of the same transaction. It was pointed out that the facts of the counterclaim served to defeat plaintiff's cause of action. The result was that the parties might try the question who committed the one assault, and judgment be rendered against him in favor of the other. There was no contemplation of a severance of the fracas, so that during one period defendant might be aggressor and liable, and during another the situation be reversed. That case is entirely analogous to two in New York, where collision of vehicles was claimed by the owner of each to have been caused solely by negligence in the other; each denying any negligence on his own part. Counter-

claim by the one first sued was sustained. *Ryan v. Lewis,* 3 Hun, 429; *Heigle v. Willis,* 50 Hun, 588, 3 N. Y. Supp. 497. The exact question here presented has, however, been decided in favor of appellant's contention in *Slone v. Slone,* 2 Met. (Ky.) 339, and against it in *Schnaderbeck v. Worth,* 8 Abb. Pr. 37; the first holding that the successive assaults are parts of the same transaction; the latter holding that they are separate transactions. The *Schnaderbeck Case* is supported by a similar holding as to mutual slanders, occurring in the same conversation, in *Sheehan v. Pierce,* 70 Hun, 22, 23 N. Y. Supp. 1119. These are all the authorities we have found on the subject, and we may consider them pretty evenly balanced; for, while we are inclined to yield special consideration to the views of the New York courts on matters of Code practice, yet only inferior courts have passed upon this question in that state, and are antagonized to the highest court of Kentucky. Considering the subject, then, as *res integra,* we must recognize that the theory of mutual assaults in a continuous encounter is reached in *Dole v. Erskine,* 35 N. H. 503, by declaring them separate and successive transactions, from which the deduction that they were not counterclaimable against each other would be obvious if the word "transaction" is used in our statute (sec. 2656, Stats. 1898) in exactly the same sense as in the case last cited. Doubtless the circuit court so assumed, and decided accordingly, but is that assumption unavoidable? The word must be used in a very limited and technical sense in order to say that, as each party gains ascendancy in a continuous fracas, the one transaction terminates and a new and separate one commences. Will such strictness and narrowness give due effect to the beneficent purpose of our statute authorizing counterclaim to a tort action on a demand arising out of the same transaction set forth in the complaint as the foundation of the plaintiff's claim? That purpose, doubtless, is to enable ultimate judgment fully settling all the rights of the parties growing out

of the transaction which the plaintiff lays before the court, so that it shall not be necessary to go over it a second time to conclude the controversy between the same parties. To accomplish this purpose, it seems to us more reasonable to hold that the word "transaction," in the statute, is broad enough to include an entire, continuous physical encounter, and that, upon counterclaim, defendant may have recovery for his damages resulting from any assault committed on him by plaintiff in the course of those events which must, of necessity, be fully established and considered in the trial of plaintiff's demand.

Again, error is assigned because, after. defendant had offered in evidence certain selected extracts from plaintiff's deposition, taken under sec. 4096, Stats. 1898, the latter was permitted to offer the whole of that deposition, over defendant's objection. That objection, however, was general, as also the exception; and as some parts of the deposition clearly related to, and served to qualify and explain, the extracts which defendant had introduced, it can hardly constitute reversible error, although other parts were inadmissible.

A further objection to certain testimony as to the degree and time of plaintiff's disablement was overruled, but the jury were instructed not to allow any damages for loss of time, because not alleged in the complaint. In this was no error, for the evidence was admissible to show the extent of plaintiff's injuries for which general damages were claimed.

Again, refusal to give *in hæc verba* an instruction requested by defendant cannot be considered, for no exception was taken until after the trial. The right to take exceptions after trial rests on sec. 2869, Stats. 1898, and is confined to the charge itself. *Firmeis v. State,* 61 Wis. 140, 20 N. W. 663; *Little v. Iron River,* 102 Wis. 250, 78 N. W. 416.

The same reason precludes consideration of the various remarks by plaintiff's counsel of which complaint is now made, with one exception, to be noticed later. The record discloses neither objection nor exception when those remarks

were made, but merely written exceptions thereto filed after
the trial.    No opportunity was thus afforded either to the
counsel to correct them, or to the trial court to rule upon
them.    Appellant, by his silence, must be held to have waived
objection thereto.    *Firmeis v. State, supra; Hacker v.
Heiney,* 111 Wis. 313, 320, 87 N. W. 249.

One remark of plaintiff's counsel is not thus excluded from
consideration, it having been objected to when made.    It
occurred in the closing argument, and is as follows:

"I know *Clancy*.    If there is $500 on the table, and
*Clancy's* honor on that table, and *Clancy* was going to lose
both, you can bet on one thing,—that *Clancy* would grab the
$500, and let the honor go.    *Defendant's counsel:* I except to
those remarks of the counsel as improper.    *By the court:*
Well, Mr. Barber, that is rather questionable.    I don't know
whether it is going any further than counsel has a right to go
or not.    *Plaintiff's counsel:* Well, I am sorry if my remarks
disturb counsel.    I could make them stronger.    *Defendant's
counsel:* I except to that remark."

That the statement objected to, upon its face, is improper,
as an attempt to state facts to the jury as of the knowledge
of the counsel, and not by way of inference from the evidence
which they had a right to consider, is obvious.    We have care-
fully examined it in connection with the rest of the argument,
which is embodied in the bill of exceptions, and have sought
to bring it within the construction which respondent's counsel
claimed for it in the oral argument before us, namely, as
merely urging that from the evidence, or from the appearance
of witnesses, he inferred that *Clancy's* character was as
described; but we can find nothing to warrant that view, or
to deprive the remark of its character as an assertion upon
the knowledge of the counsel.    The statement is made in con-
nection with discussion as to the truthfulness of *Clancy's*
testimony, evidently for the purpose of justifying an imputa-
tion of falsity thereto.    We fully appreciate that, in the heat
of argument, fervor and partisanship are to be expected from

counsel, and that, within their proper field, they constitute a virtue, rather than the reverse; but this cannot justify departure from the field of argument and discussion of the facts disclosed by the evidence, into the field of testimony by the counsel, to establish other facts. Counsel have no right to avail themselves of the opportunity of addressing the jury in argument to make assertions upon their own knowledge, which, if admissible at all, could be so only under the sanction of a witness's oath. We cannot avoid the conviction that that line was crossed in the present case. Nor can we escape the conclusion that prejudice may well have resulted. If the jury could be made to believe that *Clancy* was a man to whom money was of more importance than honor, they might well be led thereby to disbelieve his story where it was in conflict with that of other witnesses. That solemn statements of fact, not by way of argument and deduction from the evidence, but as of the counsel's own knowledge, are likely to have weight with juries, cannot be doubted. The respectability and standing of counsel only serve to enhance the peril. That such conduct necessitates reversal, unless absence of prejudice clearly appears, has been often decided. *Brown v. Swineford,* 44 Wis. 282, 292; *Hardtke v. State,* 67 Wis. 552, 30 N. W. 723; *Schillinger v. Verona,* 88 Wis. 317, 323, 60 N. W. 272; *Sullivan v. Collins,* 107 Wis. 291, 298, 83 N. W. 310; *Atherton v. Defreeze* (Mich.) 88 N. W. 886. In the light of such authorities, we are constrained to the holding that these remarks and the ruling, or, rather, absence of ruling, thereon constitute prejudicial error, necessitating reversal.

Error is assigned for that the court gave a large number of instructions requested by the plaintiff, not applicable to any specific questions, and dealing generally with the rules of law applicable to the case, and, further, that he did not inform the jury that such instructions were requested by the plaintiff; also that, when he gave certain instructions re-

quested by the defendant, he did inform the jury that they
were so requested. The exception saved does not raise the
impropriety of giving the plaintiff's instructions generally,
without indicating their applicability, if any, to the questions
of the special verdict,[1] and we need not add to what has al-
ready been said on that subject in *Rhyner v. Menasha,* 107
Wis. 201, 83 N. W. 303, and cases there cited. The char-
acterizing of instructions as requested by one party or the
other, or the failure to so characterize them, we are not in-
clined to hold ordinarily to be reversible error. In the case
of a special verdict it is not advisable practice. The province
of the court is to inform the jury only of their duty in answer-
ing the specific questions, with such definition of the terms
used in those questions as may be necessary to that end. It
is of no importance to the jury whether such information is
given in words selected by either counsel or by the court. The
instruction, when given, is that of the court; and the better
practice is to make no distinction between that portion which
originates with the judge or that which originates with
either counsel.

It is also assigned as error that the court instructed the
jury generally on the rules of law and upon the rights of the
parties, some of the instructions being such as to fully inform
the jury of the effect on the rights of the parties of the
answers to questions in the special verdict. This criticism
seems to be borne out by the record. In instructing upon the
second question, the jury are told that, if the party first
assaulted uses excessive force to repel the assault, he becomes
himself the aggressor, *and liable.* This was wholly unneces-
sary to enable the jury to answer the simple question whether
the party first assaulted did use excessive force; but, if the
jury were desirous of favoring one side or the other, it taught
them the efficacy of answering "Yes" or "No" to that ques-

---

[1] The exceptions to the instructions given at the request of the
plaintiff were upon the ground that they were "contrary to law and
contrary to the evidence."—REP.

tion. In instructing upon the fourth question, namely, whether the defendant, although the first aggressor, might recover damages, a further instruction was given, even more efficacious in pointing out to the jury the effect of their answer to the second question. The court said:

"Even if you should find that the defendant struck the first blow, but should find also that the plaintiff used more force than was reasonably necessary in repelling the assault or defending himself, then the plaintiff is not entitled to recover damages, but the defendant would be."

This instruction falls squarely within the reasons stated in *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 225, 78 N. W. 442; *New Home S. M. Co. v. Simon,* 104 Wis. 120, 126, 80 N. W. 71; *Musbach v. Wis. Chair Co.* 108 Wis. 57, 70, 84 N. W. 36; *Byington v. Merrill,* 112 Wis. 211, 88 N. W. 26. Under the authority of those cases, we must hold that reversible error was committed in imparting it to the jury.

We find no other assignments of error which demand discussion. Upon those presenting the improper remarks of respondent's counsel, and the giving of a general instruction to the jury informing them directly of the result of their answers to special verdict, reversal must be pronounced.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

WINSLOW, J., took no part.