EDWARDS, Respondent, vs. KOHN and another, Appellants

*February 11—March 8, 1932.*

For the appellants there was a brief by *Stephens, Sletteland & Sutherland,* and oral argument by *A. E. Kilmer,* all of Madison.

For the respondent there was a brief by *Grady & Dakin* of Watertown, and oral argument by *Harold M. Dakin.*

OWEN, J. At about seven o'clock p. m. on the 15th day of November, 1930, the plaintiff was struck by the automobile of the defendant Charles A. Kohn while it was being driven by the defendant Edward Kohn, son of the defendant Charles A. Kohn, as she was crossing Main street in the city of Watertown. The evidence discloses that the plaintiff was on the north side of Main street, and that upon her arrival at the northeast corner of the intersection of Main street with Water street she proceeded south across Main street upon the regular crossing, which was distinguished by parallel lines about eleven feet apart. In the center of the street, and within these parallel lines, was another rectangle marked off by parallel lines about four feet apart, to indicate a safety zone. The plaintiff testified that before proceeding to cross Main street she looked both east and west for oncoming traffic, but saw no automobiles approaching in either direction. She further testified that upon her arrival at the so-called safety zone she took another observation, saw no automobile approaching from the west, and proceeded on across the street. Before she reached the southerly curb line of Main street she was struck by the defendants' automobile.

The defendant Edward Kohn, the driver of the automobile, testified that he saw the plaintiff start across the

street when he was in the center of Water street; that it was a rainy night, the visibility was poor, and the street wet and slippery; that he was driving about twenty miles an hour; that the window on the left-hand side of the car was open, and he "hollered" at the plaintiff to warn her of his approach; that he was unable to stop the car, owing to the slippery condition of the walk; that she proceeded in front of him, and she was struck by the left-hand fender of his car.

The jury found negligence on the part of the defendants and freedom from contributory negligence on the part of the plaintiff. Judgment went in favor of the plaintiff, from which the defendants bring this appeal.

The principal contention relied upon for reversal is that the undisputed evidence reveals freedom from negligence on the part of the defendant Edward Kohn, and contributory negligence on the part of the plaintiff as a matter of law. The plaintiff testified that she looked before she started across the street. She also testified that she looked after reaching the safety zone in the center of the street, and failed to discover the approach of the defendants' car. The testimony relied upon to impeach her testimony in this respect is the testimony of the defendant Edward Kohn, who testified that when he first saw her he was in the center of Water street, driving at about twenty miles per hour, from which it is concluded that if she had looked efficiently she could not have failed to discover the approach of the defendants' car. In other words, it is claimed that her testimony that she looked is refuted by the physical facts in the case, and that she will not be heard to say that she looked when it conclusively appears that if she had looked she would have seen that which was in plain sight.

The difficulty with this contention is, that the only evidence as to the location of defendants' car when the plaintiff started across the street is the testimony of the defendant

Edward Kohn. That his testimony is inaccurate, to say the least, is demonstrable. He states that he was in the center of Water street when the plaintiff left the curb on the north side of Main street. Main street is fifty feet wide, and Water street is thirty-seven and seven-tenths feet wide. Plaintiff was struck when she was somewhere on the south side of Main street, and from the time she left the curb she traveled more than twenty-five feet before she was struck. According to the testimony of Edward he was in the center of Water street when she left the curb. If so, he traveled less than twenty feet from the time plaintiff left the curb until the accident occurred. According to his own testimony he was driving at the rate of twenty miles per hour. Under these circumstances it would be physically impossible for the plaintiff and the defendant to reach the place of the accident at the same time. In order to accomplish this, it was necessary for the plaintiff, an old lady seventy-three years of age, to walk in excess of twenty miles per hour. The jury had a perfect right to disbelieve this testimony. With this testimony out of the case there is no evidence to indicate where the defendants' car was when plaintiff took her observation, either at the time of leaving the curb or at the time of reaching the safety zone, and we do not have a situation compelling the conclusion that if plaintiff had looked she would have discovered the approach of the defendants' car. Where the car was, depended in great measure upon the rate of speed at which it was coming. While the only express testimony in the case is that it was coming at the rate of twenty miles per hour, the jury were not obliged, under the circumstances, to accept this estimate as conclusive. We consider that the evidence presented a clear jury question upon the merits of the case.

Numerous procedural errors are assigned, all of which have been considered. We will mention those appearing worthy of treatment.

The case was submitted to the jury in the form of a special verdict. Question 7 was: "Did the plaintiff, Louise Edwards, have the right of way across the highway at the time and place in question?" and question 8 was: "If you answer the seventh question in the affirmative, then answer this: Did the defendant Edward Kohn fail to yield to the plaintiff, Louise Edwards, the right of way to which she was entitled?" The jury found that the plaintiff had the right of way, which the defendant Edward failed to yield. It is claimed that the eighth question should have been, "Did the defendant Edward Kohn fail to exercise such care as the great mass of mankind· ordinarily exercises when acting under the same or similar circumstances in respect of failing to yield to Louise Edwards the right of way?" The contention in this behalf assumes that sec. 85.44 (1), Stats., providing that "The operator of any vehicle shall yield the right of way to a pedestrian crossing the highway within any marked or unmarked crosswalk at an intersection except at those intersections where the movement of traffic is being regulated by traffic officers or traffic control signals," does not impose upon the driver of an automobile the absolute duty to yield the right of way, but only to use ordinary care in that behalf. Such is not the effect of safety statutes. This statute imposes upon the drivers of automobiles the absolute duty of yielding to pedestrians on crosswalks, as therein defined, the right of way, and juries will not be permitted to find a compliance with this statute on the part of offending automobile drivers on the ground that such drivers were in the exercise of that degree of care that the great mass of mankind ordinarily exercises when acting under the same or similar circumstances. The contention made by the defendants in this respect cannot be sustained.

Question 9 of the special verdict was as follows: "If you answer the preceding question in the affirmative, then answer this: Ought the defendant Edward Kohn, in the exercise of ordinary prudence, reasonably to have foreseen that an in-

jury to another might probably result from his failure to yield the plaintiff, Louise Edwards, the right of way?" The verdict contained no question as to whether the failure of the defendant to yield to the plaintiff the right of way was the proximate cause of the accident. Question 9 was immaterial and unnecessary. Where negligence is predicated upon the violation of a safety statute, the question of reasonable anticipation or foreseeability does not enter into the question of whether such violation constitutes actionable negligence. "It is apparent, however, that where an act is done in violation of a statute or ordinance, which act invades an interest protected by the statute or ordinance, there no inquiry can be permitted as to the element of foreseeability." *Osborne v. Montgomery,* 203 Wis. 223, at p. 240, 234 N. W. 372. But, as also stated in the *Montgomery Case* (p. 240), "It is apparent that there must always be a causal relation between the act complained of and the injury sustained; otherwise liability does not follow." While it was unnecessary for the court to submit the question relating to the element of reasonable anticipation or foreseeability, a proper submission of the case did require that the element of proximate cause be submitted. But for the fact that under the circumstances of this case proximate cause clearly appears as a matter of law, the failure of the court to submit a proper question upon this subject to the jury would be reversible error. While the manner of submission in this respect is to be condemned, it does not here amount to reversible error.

Another serious question arises by reason of certain instructions which the court gave to the jury. The court submitted six questions relating to the contributory negligence of the plaintiff. When the court came to these questions in the course of his charge, he said: "We come now to those questions dealing with the conduct of the plaintiff. At this

point I shall define contributory negligence. However, if you answer the following questions from ten to fifteen in the affirmative, then you have found in effect that the plaintiff, Louise Edwards, is guilty of contributory negligence as a matter of law." It is claimed by appellants that this remark is error, because it informs the jury of the effect of its verdict.

The purpose of a special verdict has been frequently elaborated by this court. *Gutzman v. Clancy,* 114 Wis. 589, 90 N. W. 1081, and cases there cited. "The special verdict was expressly intended to submit to the jury for answer certain questions of fact, which they are to answer from the evidence, guided by instructions appropriate to the questions only, without regard to the legal effect of their answers upon the ultimate question of the rights of the parties." *Ward v. Chicago, M. & St. P. R. Co.* 102 Wis. 215, 223, 78 N. W. 442. That instructions which inform the jury of the effect of their answers to questions submitted in a special verdict constitute error is settled in this court, as will be seen by a consideration of the cases cited in *Gutzman v. Clancy, supra,* as well as many others to which reference may be made. The remark of the court here criticised, however, falls short of advising the jury of the effect of contributory negligence of the plaintiff upon the ultimate rights of the parties. The remark made did not amount to telling the jury that the contributory negligence of the plaintiff would defeat her right to recover. It simply informed them that an affirmative answer to the questions from ten to fifteen would constitute contributory negligence on her part as a matter of law. While the remark trenches closely upon the spirit and purpose of the special verdict, and might much better have been withheld, it did not go so far as to defeat the purpose of the law and to constitute reversible error. The question of the contributory negligence of the plaintiff is

frequently submitted in a single question as to whether the plaintiff was guilty of contributory negligence. The jury is not told of the effect of an affirmative answer upon the rights of the parties, and yet their reasonable intelligence will indicate to them that the consequences of an affirmative answer to such question are about the same as the court told the jury would be the consequences of their answers to the six questions. When carefully analyzed, the court only told the jury that affirmative answers to the six questions would constitute contributory negligence, but did not go further and indicate to them what the effect of contributory negligence would be upon the rights of the parties. This assignment of error cannot be sustained.

Error is also predicated upon the fact that the evidence did not justify the entry of judgment against Charles Kohn on the ground that it does not appear from the evidence that the defendant Edward Kohn was acting as the agent of the defendant Charles Kohn in driving the car at the time of the accident. The complaint alleges that the defendant Edward was acting as the agent of the defendant Charles at the time of the accident, and the answer denies this allegation. However, the issue so raised received no attention at the trial. There is casual evidence on the part of Edward that just prior to the accident he had called on Clarence Schimmel on Washington street. This evidence is simply casual, and does not seem to be addressed to the question of whether, at the time of the call, he was acting as the agent of his father, or whether he called at the home of Clarence Schimmel upon his own business or on business of his father. The evidence was rather brought out merely to indicate the movements of the defendant Edward just prior to the time of the accident. Under this state of the evidence, the doctrine of *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018, where it is held that proof of ownership of an auto-

mobile makes a *prima facie* case of agency on the part of the driver, applies. We find no error in the rendition of judgment against the defendant Charles A. Kohn.

Other assignments of error are too trivial to merit discussion.

*By the Court.*—Judgment affirmed.