BUMP, Special Administrator, Respondent, vs. VOIGHTS, imp., Appellant.

*June 5—June 29, 1933.*

For the appellant there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *H. M. Langer.*

For the respondent there was a brief by *Hill & Miller* of Baraboo, and oral argument by *J. H. Hill.*

FAIRCHILD, J.   The errors assigned by appellant are, the failure to hold Keith Bump guilty of contributory negligence as a matter of law; the reception over objections of evidence of transactions with a deceased person through and under whom appellant sustained his liability; the refusal to give instructions requested; and excessive damages.

The respondent's decedent was riding with friends north on highway 12 from Prairie du Sac to Baraboo June 14, 1931, and the accident occurred about 5:30 p. m.   At the time the injury was sustained Bump was attempting to recover a cap which had been blown from the car in which he was riding.   The car stopped about two hundred feet from where the cap finally lighted in the center of the highway. Bump alighted and ran in a direct course toward the cap, moving in a southerly direction on the east side of the road

but near its center. He looked back, evidently saw appellant driving south on the west side of the road, and continued on his way to the cap. Appellant saw Bump and understood the purpose of his entrance into the middle of the road. While slowing up somewhat, still appellant's speed was upwards of thirty miles per hour as he reached the place of the collision and drove his car close to the point where Bump stooped to pick up the cap. The jury found that appellant did not cross over the center line. As Bump was straightening up after securing the cap, the handle of appellant's car struck him on the right side toward the back, and inflicted an injury from which he died in a few hours. At the time the cap was blown into the highway appellant was upwards of one thousand feet north of the place of accident. Upon seeing Bump get out of the car appellant took his foot off the accelerator and reduced his speed so that he was traveling around thirty miles an hour as he passed the car from which Bump alighted. Appellant testifies he sounded his horn, saw Bump stumble, applied his brakes and turned sharply into the ditch on the right, but not soon enough to prevent striking Bump in the manner described.

It was apparent to all, including the appellant, that Bump had set out to recover the cap which was lying in the highway; that the cap was so near the path of appellant's car that there was danger of striking Bump unless the course was changed. The evidence sustains the finding of negligence on the part of appellant. There certainly was a jury question as to whether the appellant acted with ordinary care in driving his car so near the course being followed by Bump as to make likely a collision of the two.

It is urged on behalf of appellant that there was a violation by the deceased of the provisions of sec. 85.44 (6), Stats. This section requires pedestrians using highways, not provided with sidewalks, to travel along the left side of such highway and upon meeting a vehicle to step off the

traveled roadway if practicable. It is true the deceased was not at his extreme left of the highway as he approached the place where the cap was lying and that he traveled some two hundred feet from the car in which he had been riding to that point. But the purpose of this statute is to make a practical use of the watchfulness of both pedestrians and drivers approaching each other with the hope of reducing a likelihood of accident. We do not consider that this law was intended in any way to interfere with one's right to recover property which accidentally gets upon the highway. Under such circumstances the conduct of the actors must be regulated by the rules of ordinary care. The difference between a traveler moving steadily in a given direction toward the oncoming car and one who seeks to retrieve a lost article, who, to do so, must invade other portions of the highway, is obvious. *Shearer v. Dewees,* 151 Minn. 380, 186 N. W. 793. Bump looked back when about seventy-five feet from the object he was in pursuit of and when appellant's car was still a considerable distance to the north. The jury were warranted in inferring that Bump expected, with reason, appellant would not reach him until he had accomplished his purpose and found a place of safety. The width of the road afforded plenty of opportunity for appellant to pass Bump, and it was also reasonable to assume that Bump took this and the distance appellant was from him into consideration in making his calculation and forming a judgment that he could secure the cap and escape without injury. It cannot be said that Bump was negligent as a matter of law. *Shearer v. Dewees, supra; Karasich v. Hasbrouck,* 28 Wis. 569, 578; *Clary v. Chicago, M. & St. P. R. Co.* 141 Wis. 411, 421, 123 N. W. 649; *Osborne v. Montgomery,* 203 Wis. 223, 241, 234 N. W. 372.

Error is assigned upon the overruling of objection by appellant to the competency of the father of deceased to give testimony concerning the practice of deceased in working on

the farm and not exacting or receiving wages therefor. The evidence was elicited in the following manner: "Question. Did he earn wages while he was working on the farm?" The objection was overruled and the answer was: "No sir," followed by the question: "Mr. Bump, what was the reasonable value of his wages for labor while working on the farm?" The same objection was interposed and overruled. "Answer. Well, about $50 a month at that time." This examination was preceded by questions and answers which related to a practice of the deceased in helping his father.

Sec. 325.16, Stats., provides (so far as here material):

"No party . . . shall be examined as a witness in respect to any transaction . . . by him personally with a deceased . . . person . . . in which the *opposite* party *derives his title* or *sustains his liability* to the cause of action *from, through* or *under* such deceased or insane person."

Appellant is the "opposite party" contemplated by the statute, but he does not derive his title or sustain his liability from, through, or under respondent's son. He sustains his liability through his own negligence and not through or under any transactions of the deceased son, or any act on his part. If the deceased were an employee of appellant for whose negligence it was sought to hold appellant on the doctrine of *respondeat superior,* then appellant would sustain his liability through the deceased. We conclude, therefore, that no error was committed by admitting this evidence.

The appellant requested the following instructions be given to the jury on the question of damages:

"Under the law of Wisconsin you cannot allow any damages to the plaintiff to compensate the parents of Keith Bump for sorrow and grief or loss of society and companionship sustained by them as a result of the death of their son, and such element must not be considered by you."

"The deceased, Keith Bump, was twenty-three years of age at the time of his death, and you are instructed that under the law of this state parents cannot claim the services

of a child as a matter of right, after such child arrives at the age of twenty-one years. When a child reaches the age of twenty-one years he is entitled to retain all of the money earned by him as the result of his labor and services, and he is not required to turn the same, or any portion thereof, over to his parents upon demand by them."

There were other requests of similar import, all of which were refused. The only comment in the charge on the subject of the damages to be allowed on this branch of the case is to the effect that such damages "include such, and such only, as it is reasonably certain were sustained so far as they flow naturally and directly from the accident, and that will be reasonable, fair, and just compensation to the parents of Keith Bump for their pecuniary or money loss and injury which it is reasonably certain such parents sustain, resulting from the death of the son, as a result of such accident. . . ." This accident occurred before passage of the act creating a cause of action for loss of society and companionship and therefore the requested instruction as quoted first above stated the law as it was at the time the injury occurred and should have been included in the charge to the jury. *Prange v. Rognstad,* 205 Wis. 62, 236 N. W. 650. The second quoted requested instruction should also have been given. The comment made by the court resulted in the charge being too general; for it left out any suggestion as to what constituted a standard or acceptable measurement to enlighten the jury and aid them in arriving at a proper assessment of damages. The problem presented in a case of this character is a difficult one at best and the jurors are entitled to the assistance of information as to the particular elements to be included in their consideration of the damages. To guard against mistakes arising from misunderstanding by the jury, the meaning of words and phrases having a special, technical, and peculiar significance in law should be made reasonably clear and understandable. While the meaning of ordi-

nary words and phrases used in an usual and conventional sense need not be explained, the better practice is for the court in all cases to define and explain expressions of a technical nature to the jury when words and phrases of that character are used in the instructions. This of course includes the term "pecuniary injury."

We agree with the learned trial judge in his conclusion on motions after verdict that the jury was warranted in finding appellant guilty of negligence and deceased free from contributory negligence. But error was committed on the trial and the award allowed by the trial court cannot stand. However, we are of the opinion that the errors can be cured and the appellant's rights saved with reasonable certainty under the evidence by allowing respondent to consent to a reduction of the damages. Because of the relation between deceased and his father showing on the part of the deceased loyalty and concern for the father, a loss by reason of the death of the son necessarily results in damage to the parents. Had the correct principles of law been applied in measuring the damages, the sum allowed by the jury might be sustained; but in view of the state of the record we find it necessary to reverse the judgment and grant a new trial unless respondent consents to a reduction. Under the circumstances there will have to be a new trial unless the respondent will consent to reduce the award for pecuniary injury sustained by the parents to $1,000. This we consider the lowest amount at which a fair-minded jury properly instructed would probably assess the damages. This permits the damages of $100 for pain and suffering of the deceased to stand. *Baxter v. Chicago & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Prasch v. Prasch,* 200 Wis. 353, 228 N. W. 745.

An instruction of the trial court, though not challenged, inadvertently contained a misstatement of the law. We call

attention to this so that in case of a retrial it will not be repeated. The portion of the charge reads:

"Any automobile operator who disobeys any of the statutory regulations, under such circumstances that he ought reasonably to foresee that such disobedience might probably result in personal injury or damage, is guilty of negligence."

The element of foreseeability need not be passed on when a safety statute imposes on each individual the duty of obedience to it. In that event the legislature has prescribed the standard of care for the measurement of conduct. This covers the elements of want of ordinary care and reasonable anticipation of injury involved in actionable negligence. *Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372; *Edwards v. Kohn,* 207 Wis. 381, 241 N. W. 331; *Wiese v. Polzer, post,* p. 337, 248 N. W. 113.

*By the Court.*—Judgment reversed, and cause remanded for a new trial, but with the option to respondent, however, to avoid such new trial by electing, within twenty days after the filing of the *remittitur,* to take judgment for the sum of $1,100, with costs in the court below.